Carroll
No. 2000-657

THE STATE OF NEW HAMPSHIRE

v.

STEVEN NEWMAN

Argued: January 15, 2002
Opinion Issued: September 13, 2002

*Philip T. McLaughlin,* attorney general (*Stephen D. Fuller,* assistant attorney general, on the brief and orally), for the State.

*Richard E. Samdperil,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C. J. The defendant, Steven Newman, was convicted after a jury trial in Superior Court (*O'Neill,* J.) of aggravated felonious sexual assault against a victim younger than thirteen. *See* RSA 632-A:2, I (1996). He appeals, arguing that the trial court erred when it: (1) ruled that he could not cross-examine the victim about her knowledge of a friend's recent sexual assault allegations; and (2) allowed a laboratory technician to render an expert opinion about the potential sources of red blood cells found in a vaginal smear. We affirm.

The jury could have found the following facts. On the evening of April 16, 1999, the eight-year-old victim was at home with her mother and the defendant, her stepfather.

Sometime during the night, the victim awoke to find the defendant "start[ing] to bother[]" her. The victim testified that the defendant twice put his finger "down [her] pee pee," and later put his finger in her "bottom."

In the morning, the victim went next door to the home of her friend KP, where she told KP what had happened. KP, in turn, told her mother and her aunt, and KP's mother called the police.

That afternoon, an investigating officer took the victim and the victim's mother to the emergency room at Huggins Hospital in Wolfeboro, where the victim was examined by Dr. Scott Horton. The examination included the use of a "rape kit."

The State's forensic laboratory analyst, Susan Withey, examined the "rape kit" and found an occasional red blood cell on the vaginal smear. Ms. Withey testified on direct examination that there are two reasons red blood cells would be found on a smear: "either the person is menstruating, or there's been some sort of trauma."

The defendant was convicted of aggravated felonious sexual assault for penetrating the victim's vagina with his finger. On appeal, he argues, first, that the trial court erred when it barred him from cross-examining the victim about KP's recent claim that she had been sexually assaulted by her babysitter. We disagree.

The defendant's contention at trial was that the victim had fabricated the sexual assault allegations in order to protect her mother by having him separated from the family. In an effort to prove that the victim knew that

allegations of sexual assault could result in his removal from the home, the defendant filed a motion *in limine* prior to trial to cross-examine the victim about KP's recent allegations of sexual assault. The defendant asserted that, prior to the victim's disclosure of his alleged assault to KP, KP had told the victim that she had been sexually assaulted by her babysitter and that the babysitter was thereafter prevented from having any contact with KP. Thus, on cross-examination, the defendant sought to inquire at trial about the following: (1) that KP made allegations of sexual assault against her babysitter prior to the victim's allegations of sexual assault against the defendant; (2) that action had been taken to protect KP from her alleged assailant; (3) that the victim and KP were close friends who frequently spent time together; and (4) that the victim's accusations against the defendant were made through KP after the two girls conversed. Following a hearing, the trial court rejected the defendant's constitutional and evidentiary arguments, but stated:

> Despite the above determination, the Court concludes that the Defendant may inquire at trial of both the complainant and KP, should they testify, about any suggestions, recommendations, or discussions between the two as to a course of action whereby false allegations of sexual assault would be an essential component of a plan to have the defendant removed from the complainant's home prior to the formal investigation by the authorities in this matter. Such inquiry would be proper pursuant to Rules 404(b) and 401. However, for the reasons discussed above, the Defendant may not question either the complainant or KP about specific details involving KP's alleged sexual assault.

On appeal, the defendant contends that he was denied his constitutional right to confront the principal witness against him through cross-examination designed to impeach or discredit her credibility and to reveal any ulterior motives she may have had in accusing him of sexual assault. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI. We first address the defendant's argument under our State Constitution, citing federal authority only to aid our analysis. *See State v. Ball*, 124 N.H. 226, 231-33 (1983). Because the federal Confrontation Clause affords no greater protection than the State Confrontation Clause, we need not undertake a separate federal analysis. *See State v. Dixon*, 144 N.H. 273, 278 (1999).

■ "The opportunity to impeach a witness's credibility through cross-examination is an incident of rights guaranteed by part I, article 15 of the State Constitution." *State v. Roberts*, 136 N.H. 731, 744 (1993). Although a trial court has broad discretion to fix the limits of cross-examination, it

"may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry." *State v. Dugas*, 147 N.H. 62, 72 (2001) (quotations and citation omitted). "Once a defendant has been permitted a threshold level of inquiry, however, the constitutional standard is satisfied, and the judge's limiting of cross-examination is measured against an [unsustainable exercise of discretion] standard." *State v. Smart*, 136 N.H. 639, 667-68 (citation omitted), *cert. denied*, 510 U.S. 917 (1993); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). Thus, when the record reveals that a threshold level of inquiry was allowed, we will uphold the trial court's decision limiting the scope of further cross-examination unless the defendant demonstrates that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *See Smart*, 136 N.H. at 668; *Lambert*, 147 N.H. at 296.

The defendant argues that he was constitutionally entitled to inquire whether the victim knew that: (1) KP had made sexual assault allegations against someone; and (2) action was taken to protect KP from the alleged perpetrator. The defendant argues that such evidence is relevant to whether the victim had fabricated the story because a jury could have inferred from the evidence that the victim knew that an allegation of sexual assault could result in the defendant being removed from the home.

■ While we agree that whether the complainant knew that making a sexual assault allegation could result in the defendant being removed from the home was relevant to the defendant's fabrication defense, we conclude that the trial court's order did not bar the defendant from making at least a threshold inquiry at trial into the victim's knowledge about the consequences of making an allegation of sexual assault. The trial court's order did not preclude the defendant from cross-examining the victim about whether she knew at the time she made the allegations that they could result in the defendant being removed from the home. Furthermore, the order specifically noted that the defendant could cross-examine the victim about "a plan to have the defendant removed from the [victim]'s home." Thus, the order did not, as the defendant asserts, bar him from attempting to establish that the victim knew that an allegation of sexual assault could result in his expulsion from the home. Therefore, the order did not impermissibly limit the defendant's ability to effectively impeach the principal witness against him at trial in violation of Part I, Article 15 of the New Hampshire Constitution.

The defendant did not make these threshold inquiries at trial, despite the fact that the trial court's order did not bar him from doing so. Therefore, we do not decide whether a limitation on further cross-

examination would have been unreasonable or untenable to the prejudice of the defendant's case, had the victim been asked these questions, and answered "no."

The defendant next argues that the trial court erred when it allowed Susan Withey, a criminalist at the State forensic laboratory, to testify to her opinion that the presence of red blood cells was indicative of either menstruation or trauma. The defendant objected on the grounds that Withey's opinion was not the result of any identifiable training or course of study, and was not the result of expertise in this area. The trial court ruled that the State had made a sufficient showing to allow Withey to render an expert opinion as to the source of the red blood cells.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." N.H. R. Ev. 702. The question for the trial court in determining the admissibility of expert testimony is "whether the witness, by either study or experience, has knowledge on the subject matter of his or her testimony so superior to that of people in general concerning it that his or her views will probably assist the triers of fact." N.H. R. Ev. 702 Reporter's Notes (quotation omitted).

The State, as the party offering Withey as an expert, had the burden of establishing her qualifications. *State v. Coleman*, 133 N.H. 713, 715 (1990). Expert testimony "must be reliable to be admissible," *State v. Cressey*, 137 N.H. 402, 404-05 (1993), and "the determination of whether particular expert testimony is reliable and admissible rests within the sound discretion of the trial court." *State v. Hammond*, 144 N.H. 401, 406 (1999) (brackets and quotation omitted). We will therefore uphold a trial court's decision admitting an expert opinion unless we find its ruling was untenable or unreasonable to the prejudice of the defendant's case. *State v. Paris*, 137 N.H. 322, 331 (1993).

■ We agree with the trial court that the State carried its burden of proving that Withey's qualifications were sufficient to allow her to render an opinion as to the source of the red blood cells in the victim's vaginal smear. Withey testified that she had over twelve years of experience as a criminalist and in the serology section of the New Hampshire State Police forensic laboratory. Her job as a serologist was to analyze clothing, rape kits, and other materials for evidence of blood, semen, urine, hair fibers, and the like. As a criminalist, she had analyzed over one thousand rape kits. She had extensive experience identifying skin cells, red blood cells, white blood cells, spermatozoa and bacteria, and she was also a certified

medical technician. She based her conclusions regarding the victim's sample upon her training in medical technology, her years of experience examining vaginal smears, and articles she had read.

The defendant argues that Withey's opinion was unreliable because her training and experience provided insufficient foundation to support it. We disagree. Withey's testimony was based upon years of education and experience in forensic testing in sexual assault cases. Her training and education, therefore, qualified her to convey to the jury that in her experience, the occurrence of "occasional" red blood cells in a vaginal smear was generally caused by either menstruation or trauma. That Withey had no specific knowledge about the gynecological features of the premenarcheal female does not provide a basis for excluding her testimony, but, rather, goes to the weight that should be accorded her opinion. *See State v. Cort*, 145 N.H. 606, 614 (2000); *State v. Eason*, 133 N.H. 335, 343-44 (1990); *State v. Berry*, 124 N.H. 203, 208 (1983).

"Objections to the basis of an expert's opinion go to the weight to be accorded the opinion evidence, and not to its admissibility. The appropriate method of testing the basis of an expert's opinion is by cross-examination of the expert." *Cort*, 145 N.H. at 614. Here, the record reflects that the defendant had an opportunity to, and did, in fact, attack the basis for Withey's opinion to demonstrate to the jury why her testimony should not be given any weight. *See id.*; *see also State v. Santamaria*, 145 N.H. 138, 145 (2000). The defendant established, upon cross-examination, that Withey's training did not include any specific courses in the gynecology of premenarcheal girls, that she had not treated or diagnosed any young girls, and that she had not done or read of any studies specifically on the sources of red blood cells in premenarcheal girls. This is not a case, as the defendant suggests, where a thorough cross-examination could not have effectively exposed any unreliable elements or assumptions in the witness's testimony. *Cf. Cressey*, 137 N.H. at 410.

Any arguments the defendant raised in his notice of appeal but did not brief are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

NADEAU, J., sat for oral argument but did not take part in the final vote; BRODERICK and DALIANIS, JJ., concurred.