Merrimack
No. 2005-775

THE STATE OF NEW HAMPSHIRE

v.

TERRY MILLER

Argued: February 27, 2007
Opinion Issued: April 18, 2007

*Kelly A. Ayotte,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Getman, Stacey, Schulthess & Steere, P.A.,* of Bedford (*Andrew R. Schulman* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Terry Miller, appeals his conviction by a jury on three counts of aggravated felonious sexual assault, *see* RSA 632-A:2, III (1996), and one count of felonious sexual assault, *see* RSA 632-A:3, III (1996) (amended 2003). He argues that the Superior Court (*Fitzgerald,* J.) erred when it granted the State's motion *in limine* to preclude him from cross-examining the victim about her allegations that her father had physically and emotionally abused her. We remand.

The record reveals the following: The aggravated felonious sexual assault indictments alleged that the defendant engaged in a pattern of sexual assault involving sexual intercourse, cunnilingus and masturbation; the felonious sexual assault charge alleged a single sexual assault involving fellatio. At the time of trial, the victim was eighteen years old; the charges alleged conduct from 1993, when she was six, from 1995, when she was eight, and from 1996, when she was nine.

Before trial, the State moved *in limine* to exclude, among other things, evidence that the victim had alleged that her father had abused her. The State acknowledged that the New Hampshire Division for Children, Youth and Families (DCYF) had classified the allegations as unfounded. The State sought to preclude the defendant from cross-examining the victim about them.

Over the defendant's objection, the trial court granted this portion of the State's motion *in limine.* The trial court ruled that the defendant could not cross-examine the victim about the allegations against her father unless he showed that they were demonstrably false by clear and convincing evidence. *See State v. White,* 145 N.H. 544, 548 (2000), *cert. denied,* 533 U.S. 932 (2001), *petition for habeas corpus denied by White v. Coplan,* 296 F. Supp. 2d 46 (D.N.H. 2003), *vacated on fed'l constitutional grounds,* 399 F.3d 18 (1st Cir.), *cert. denied,* 126 S. Ct. 478 (2005). The court found that

the defendant failed to meet this burden. Noting that the defendant intended to call several witnesses to testify that the victim was untruthful, the court ruled that "while the abuse allegations may be informative, their weight is diminished and the Court does not see the introduction of those statements as compelling." The court, therefore, precluded the defendant from cross-examining the victim about the abuse allegations against her father.

On appeal, the defendant argues that the trial court misconstrued and misapplied New Hampshire Rule of Evidence 608(b) by requiring him to show that the victim's allegations against her father were demonstrably false before permitting him to cross-examine her about them.

## I

A trial court has broad discretion to determine the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion. *See State v. Abram*, 153 N.H. 619, 632 (2006). To prevail under this standard, the defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. *Id.*

## A

Rule 608(b) provides, in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule § 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

Although Rule 608(b) permits a cross-examiner to inquire into conduct that is probative of the witness's character for truthfulness or untruthfulness, generally, the examiner must take the answer as the witness gives it. *State v. Hopkins*, 136 N.H. 272, 276 (1992). Rule 608(b) prohibits the examiner from introducing "extrinsic evidence, such as calling other witnesses to rebut the witness's statements." *Id.* The objective is to avoid a trial within a trial; that is, to avoid the litigation of issues that are collateral to the case at hand. *Id.*

Nothing in this rule requires that a defendant prove that allegations a victim made against someone else are demonstrably false by clear and convincing evidence before being permitted to cross-examine the victim

about them. *See Coplan*, 399 F.3d at 22. The "demonstrably false" requirement comes from our decision in *White. See id.*

In *White*, the defendant appealed his convictions for felonious sexual assault, arguing, in part, that the trial court erred when it excluded extrinsic evidence of the victims' prior allegations of sexual assault against other individuals. *White*, 145 N.H. at 547. Extrinsic evidence means evidence other than the witness's own answers on cross-examination. *See State v. Higgins*, 149 N.H. 290, 299 (2003). Although Rule 608(b), on its face, bars extrinsic evidence of "[s]pecific instances of the conduct of a witness" introduced "for the purpose of attacking or supporting the witness' credibility," the trial court ruled that the defendant could introduce extrinsic evidence of the victim's prior allegations *if* he proved that they were demonstrably false. *White*, 145 N.H. at 547. We agreed that this was the correct standard to impose before permitting the defendant to introduce *extrinsic evidence* of prior allegations of sexual assault under Rule 608(b). *Id.* at 548. We explained that we interpreted "demonstrably false" to mean "clearly and convincingly untrue." *Id.* (quotation omitted).

We did *not* rule, however, that a defendant had to meet the "demonstrably false" standard before Rule 608(b) permitted him to *cross-examine* a victim about prior allegations of sexual assault. Rather, we ruled that the Confrontation Clauses of the Federal and State Constitutions did not mandate such cross-examination unless the defendant met the "demonstrably false" standard. *Id.* at 553-54. We held that because there was no clear and convincing evidence that the prior allegations of sexual assault were "demonstrably false," the trial court did not violate the defendant's constitutional rights under the Federal and State Confrontation Clauses when it precluded him from cross-examining the victims about them. *Id.* On habeas review, the First Circuit Court of Appeals in *Coplan*, 399 F.3d at 22-23, 26-27, took issue with this part of our decision.

Thus, the trial court erred when it construed Rule 608(b) to require the defendant to prove that the victim's allegations against her father were demonstrably false by clear and convincing evidence before it could permit him to cross-examine the victim about them. Consistent with Rule 608(b), the trial court *could* have exercised its discretion to permit the defendant to cross-examine the victim about the prior false allegations, provided that the court found that the allegations were probative of truthfulness and untruthfulness and otherwise admissible. Consistent with *White*, the trial court would not have been constitutionally *required* to permit this cross-examination unless the defendant proved that the prior allegations were demonstrably false. Contrary to the trial court's ruling, the trial court's discretion with respect to cross-examination about prior false allegations

of sexual assault is broader under Rule 608(b) than it is under the State Constitution.

The trial court's misinterpretation of *White* is understandable given that in opinions decided after *White*, we have been less than clear in describing its holding. *See Abram*, 153 N.H. at 631-33; *State v. Etienne*, 146 N.H. 115, 118-19 (2001); *State v. Gordon*, 146 N.H. 258, 261 (2001). In *Abram*, 153 N.H. at 631, for instance, we stated that in *White*: "We affirmed the trial court's exclusion of both cross-examination of the victims and extrinsic evidence concerning the prior allegations, holding that 'a defendant may introduce a victim's prior allegations of sexual assault by showing that the prior allegations were demonstrably false,' which we interpreted to mean 'clearly and convincingly untrue.'" In *Etienne*, 146 N.H. at 118-19, we interpreted *White* to mean that before the defendant could impeach the credibility of a witness by inquiring about a police report alleging a sexual assault that she filed and later recanted, he must show that the prior allegations were demonstrably false. In *Gordon*, 146 N.H. at 261, we described our holding in *White* as "stating that a defendant in a sexual assault case may cross-examine the victim about a prior false allegation of sexual assault under Rule 608(b) only if the defendant makes a threshold showing of 'probity and similarity,' and demonstrates clearly and convincingly that the prior allegations were false."

In the above cases, we conflated the issues of when, as a constitutional matter, a trial court *must* permit a defendant to cross-examine a witness about allegedly false accusations of sexual assault and when, as an evidentiary matter, a court *may* allow a defendant to do this. In so doing, we were imprecise about what *White* actually held. In *Gordon*, in particular, we erred when we construed *White* to require a defendant to demonstrate clearly and convincingly that the prior allegations were false before being permitted to cross-examine the victim about them under Rule 608(b). "While we recognize the value of stability in legal rules, we have also acknowledged that the doctrine of stare decisis is not one to be either rigidly applied or blindly followed. The stability of the law does not require the continuance of recognized error." *State v. Ramos*, 149 N.H. 118, 127-28 (2003) (quotation omitted). Accordingly, we overrule *Gordon* to this limited extent.

B

▮ The State argues, alternatively, that the trial court precluded the defendant from cross-examining the victim about the allegations against her father under Rule 403. "Rule 403 is an exclusionary rule that cuts across the rules of evidence." *State v. McGill*, 153 N.H. 813, 816 (2006) (quotation omitted); *see* N.H. R. Ev. 608 Reporter's Notes. Rule 403

provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision upon something other than the established propositions in the case. *State v. Ainsworth*, 151 N.H. 691, 696 (2005).

We accord the trial court considerable deference in determining whether probative value is substantially outweighed by the danger of unfair prejudice, and we will not disturb its decision absent an unsustainable exercise of discretion. *Id.*

We disagree with the State that the trial court exercised its discretion under Rule 403. The trial court's order refers to the demonstrably false standard in *White* and whether, in effect, it was compelled to permit the defendant to cross-examine the victim about the allegations against her father.

■ As we are unable to decide whether the proposed cross-examination was permissible under Rule 403 as a matter of law, *see Simpson v. Young*, 153 N.H. 471, 474 (2006), and as the State has not argued that any error was harmless, we remand this issue to the trial court for resolution in the first instance, *see State v. Hall*, 154 N.H. 180, 185 (2006). Accordingly, if, on remand, the trial court decides that the cross-examination was admissible under Rule 403, then it shall grant the defendant a new trial. If, on the other hand, the trial court decides that cross-examination was not admissible under Rule 403, then the defendant's conviction shall stand.

■ Because we have not previously discussed the interplay between Rules 403 and 608, we set forth the following principles to aid the trial court in its analysis. "The probative value of specific-instances evidence offered under [Rule 608(b)] derives from the fact that this evidence may help the trier of fact accurately determine witness credibility." 28 WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE § 6118, at 94 (1993). "The degree of probative value can be the function of a number of factors" including: (1) "whether the testimony of the witness ... is crucial or unimportant"; (2) "the extent to which the evidence is probative of truthfulness or untruthfulness"; (3) "the extent to which the evidence is also probative of other relevant matters"; (4) "the extent to which the act of untruthfulness is connected to the case"; (5) "the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony"; (6)

"the nearness or remoteness in time of the specific instances to trial"; (7) "the likelihood that the alleged specific-instances ... conduct in fact occurred"; (8) "the extent to which specific-instances evidence is cumulative or unnecessary in light of other evidence already received on credibility"; and (9) "whether specific-instances evidence is needed to rebut other evidence concerning credibility." *Id.* at 94-97.

■ Unfair prejudice can occur in at least three ways. *Id.* at 97. First, "the jury may develop a bias against the party associated with th[e] witness" who committed the bad acts. *Id.* Second, the jury could give the specific-instances evidence "too much weight," even if the evidence was admissible only to bear upon the witness's character for truthfulness or untruthfulness. *Id.* at 98-99. Third, where the witness at issue is the defendant, the jury could use the misconduct evidence to "draw an inference about the likelihood that [the] defendant committed the acts with which he is charged in the case at bar." *Id.* at 99.

■ The court may also consider other "costs and dangers" of specific-instance evidence, including whether doubts over the occurrence of the specific-instance evidence will result in "time consuming and distracting minitrials on that point" and whether admitting the evidence will subject witnesses to "harassment and undue embarrassment." *Id.* at 97.

## II

We next address the defendant's constitutional claims. We must address these claims because if either the State or Federal Constitution required the trial court to permit the defendant to cross-examine the victim about the prior false allegations, remand to allow the trial court to exercise its discretion under Rule 403 would be unnecessary.

The defendant contends that the trial court's decision infringed upon his rights under the Confrontation Clauses of the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI, XIV. We first consider his arguments under the State Constitution, referring to federal decisions only for guidance. *See State v. Ball*, 124 N.H. 226, 231-33 (1983).

■■ "The opportunity to impeach a witness's credibility through cross-examination is an incident of rights guaranteed by part I, article 15 of the State Constitution." *State v. Newman*, 148 N.H. 287, 289 (2002) (quotation omitted). Although a trial court has broad discretion to fix the limits of cross-examination, it may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry. *Id.* at 289-90. "Once a defendant has been permitted a threshold level of inquiry, however, the

constitutional standard is satisfied, and the judge's limiting of cross-examination is measured against an unsustainable exercise of discretion standard." *Id.* at 290 (quotation and brackets omitted). "Thus, when the record reveals that a threshold level of inquiry was allowed, we will uphold the trial court's decision limiting the scope of further cross-examination unless the defendant demonstrates that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.*

The defendant contends that cross-examining the victim about the allegations against her father was relevant to his assertion at trial that she fabricated the charges against the defendant. While we agree that whether the victim falsely accused her father of physical and emotional abuse was relevant to the defendant's fabrication defense, we conclude that the trial court's order did not bar the defendant from making a threshold inquiry at trial into the victim's character for truthfulness or untruthfulness. *See id.* We therefore conclude that the trial court's decision "did not impermissibly limit the defendant's ability to effectively impeach the principal witness against him at trial in violation of Part I, Article 15 of the New Hampshire Constitution." *Id.*

The trial court's order did not deny the defendant the right to attack the victim's credibility altogether. At trial, the jury heard from seven witnesses regarding the victim's character for untruthfulness. The victim's father confirmed that he told an investigator that the victim "fabricates stories and is known by the family to be a liar and untrustworthy." He explained that when the victim was a child, he found her to be trustworthy, but that since approximately 2002, he has not. He also testified that he personally has always had doubts about his daughter's allegations against the defendant.

The victim's step-uncle, who had known her since birth, testified that the victim was a "drama queen" with "a propensity for lying to get what she wants." He testified that she "doesn't know very many moral boundaries, and it's unfortunate that she's willing to do whatever she needs to do." He testified that because he believes that she is untrustworthy, he would not believe her testimony given under oath. The victim's step-aunt also testified that she found the victim to be untruthful as did: (1) a neighbor who had known the victim for approximately fourteen years and babysat for her five days a week from 1994 through 1996; (2) the neighbor's husband; (3) a friend of the victim's father who had known her since she was five or six years old; and (4) the mother of one of the victim's friends who had known the victim for approximately eight years.

Additionally, the defendant cross-examined the victim at length about the inconsistencies between her trial testimony and the information she gave to police investigators. For instance, while at trial, the victim testified

that she had sexual intercourse with the defendant between twenty and thirty times, she told the investigators that she had intercourse with him between two and four times.

■ Our review of the record demonstrates that the defendant was able to make a sufficient threshold level of inquiry in his attempt to discredit the victim in the eyes of the jury and establish her character for untruthfulness. *See State v. Flynn*, 151 N.H. 378, 388-89 (2004). Under these circumstances, we hold that the State Confrontation Clause did not require the trial court to allow the defendant to cross-examine the victim about the allegations against her father.

## III

■ We now analyze the defendant's arguments under the Federal Confrontation Clause. *See* U.S. CONST. amends. VI, XIV. "The Confrontation Clause lies obscurely behind claims of evidentiary error because, in a few extreme cases, the Supreme Court has invoked it to overturn state court restrictions on cross-examination or impeachment." *Ellsworth v. Warden*, 333 F.3d 1, 7 (1st Cir. 2003) (quotation and ellipsis omitted). "The Supreme Court has declared cross-examination an essential constitutional right for a fair trial, subject to reasonable limits reflecting concerns such as prejudice, confusion or delay incident to marginally relevant evidence." *Coplan*, 399 F.3d at 24 (quotations omitted). In this way, the Federal Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

■ "In a criminal case, restrictions on the defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve." *Coplan*, 399 F.3d at 24 (quotations omitted). "Factors that the Supreme Court has deemed relevant are the importance of the evidence to an effective defense, the scope of the ban involved, and the strength *vel non* of state interests weighing against admission of the evidence." *Id.* (citations omitted).

The Supreme Court has distinguished between a "general attack" on a witness's credibility, in which evidence is offered to support an inference that the witness has a tendency to lie, and a more specific attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). In *Davis*, the Court concluded that "[t]he partiality of a witness . . .

is always relevant as discrediting the witness and affecting the weight of testimony," *id.* (quotation omitted), and ruled this kind of attack "to be part of the constitutionally protected right of cross-examination," *Boggs v. Collins*, 226 F.3d 728, 737 (6th Cir. 2000), *cert. denied*, 532 U.S. 913 (2001). In his concurring opinion, Justice Stewart opined: "[T]he Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past convictions." *Davis*, 415 U.S. at 321 (Stewart, J., concurring). In *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986), the Court held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness."

Some federal circuit courts of appeal have interpreted these decisions to mean that "cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not." *Boggs*, 226 F. 3d at 737; *see Quinn v. Haynes*, 234 F.3d 837, 845 (4th Cir. 2000), *cert. denied*, 532 U.S. 1024 (2001); *United States v. Bartlett*, 856 F.2d 1071, 1088-89 (8th Cir. 1988); *Hughes v. Raines*, 641 F.2d 790, 793 (9th Cir. 1981). In a rape case, courts have explained that cross-examination as to general credibility means cross-examination that is intended to permit the inference that "because the victim made a false accusation in the past, the instant accusation is also false." *Bartlett*, 856 F.2d at 1088; *see Raines*, 641 F.2d at 793. Cross-examination as to bias or motive, on the other hand, is intended to establish that the victim had a bias against the defendant or for the prosecution or had a motive to lie. *Raines*, 641 F.2d at 793.

Although the First Circuit has not ruled that cross-examination as to general credibility is entitled to *no* federal constitutional protection, it has ruled that such cross-examination may be entitled to less constitutional protection. *See Coplan*, 399 F.3d at 26. While, in theory, we are not bound by the decisions of the First Circuit Court of Appeals, we elect to follow them on this subject. *See State v. Remick*, 149 N.H. 745, 747 (2003).

 Cross-examination as to general credibility may be entitled to less federal constitutional protection, the Seventh Circuit has explained in a case upon which the First Circuit relied in *Coplan*, 399 F.3d at 25-26, because its probative value "is small and may be outweighed by the prejudicial effect of revealing that the witness had made such a serious charge falsely." *Redmond v. Kingston*, 240 F.3d 590, 593 (7th Cir. 2001). By contrast, cross-examination to show that the complaining witness had a

motive to lodge a false accusation against the defendant can be "highly probative." *Id.* at 592.

In *Redmond,* the court held that the defendant had a federal constitutional right to cross-examine the victim about her assertion, eleven months before the alleged offense, that she had been forcibly raped. *Id.* at 591. She repeated the story to a hospital nurse and to a police officer, but later admitted that she had made up the story to get her mother's attention. *Id.*

The defendant wanted to cross-examine the victim about this prior false allegation to show that she "would lie about a sexual assault ... to get attention, and thus had a motive to accuse him falsely." *Id.* The court of appeals ruled that precluding the defendant from cross-examining the victim about this prior false charge infringed upon his constitutional right of confrontation. *Id.* at 591-93. The defendant wanted to use the cross-examination not merely to show that the victim was a liar, but to demonstrate that she had a motive for fabricating a charge against him. *Id.* at 591.

In *Coplan,* 399 F.3d at 18, the First Circuit used the distinction between cross-examination as to general credibility and cross-examination as to bias, motive or prejudice, when it decided that the defendant was entitled as a matter of federal constitutional law to cross-examine the victims about their prior allegations of sexual assault. The court ruled that the evidence the defendant sought to introduce by cross-examining the victims about their prior allegations of sexual assault, was "not merely 'general' credibility evidence." *Coplan,* 399 F.3d at 24. Rather, it was "considerably more powerful" because "[t]he past accusations were about sexual assaults, not lies on other subjects" and "the past accusations by the girls bore a close resemblance to [their] present testimony—in one case markedly so." *Id.* As the court explained: "We are dealing here with something far more potent than 'general credibility' evidence which, under confrontation clause standards, may have a lower status." *Id.* at 26.

Because of the similarity between the prior accusations and the accusations against the defendant, the evidence suggested a motive to lie. *Id.* at 24, 26. The court stated: "In our case the nature of the motive may be unknown; but if the prior accusations are similar enough to the present ones and shown to be false, a motive can be inferred and from it a plausible doubt or disbelief as to the witness' present testimony." *Id.* at 26. Under these circumstances, the court ruled, the defendant was entitled under the Federal Confrontation Clause "to explore the prior accusations on cross-examination." *Id.*

The evidence at issue is not the kind of "potent" evidence in *Coplan.* In *Coplan,* "the past accusations by the girls bore a close resemblance to

[their] present testimony—in one case markedly so." *Id.* at 24. Here, the victim's allegations against her father of physical and emotional abuse were not remotely similar to her allegations against the defendant.

Similarly, in *Coplan*, the other accusations of sexual assault were made *before* the victims accused the defendant of sexual assault. *Id.* at 21. Here, the victim's allegations against her father were made more than two years after she accused the defendant of sexually assaulting her.

Also, the evidence that the victims' prior sexual assault allegations in *Coplan* were false was far more compelling than the evidence here that the accusations against the victim's father were false. In *Coplan*, regarding the charges against the victims' neighbor, the defendant "proferred the neighbor's verdict of acquittal; testimony from two witnesses at the 1994 trial claiming that the older girl had admitted ... that the original accusations were a lie; and various law enforcement reports of the incident from the younger girl that described the alleged assault inconsistently." *Id.* With respect to the older girl's accusation against her cousin, the defendant "proferred testimony ... suggesting that the older girl had admitted the accusations ... were a lie," as well as reports from a police investigation into the incident, which was eventually terminated because of a finding of reasonable doubt, and inconsistencies between the girl's claim and facts collected by the police. *Id.* at 21-22.

By contrast, here, the most compelling evidence that the allegations were false was the decision by DCYF to close its investigation. There was no evidence that the victim had ever recanted her allegations against her father.

██ Given the dissimilarities between the type of evidence at issue in *Coplan* and that presented in this case, we conclude that the defendant had no federal constitutional right to cross-examine the victim about her allegations that her father physically and emotionally abused her.

*Remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.