# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1959

_____

United States of America

*Plaintiff - Appellee*

v.

Gillman Roddy Long,
also known as Dave Gillman Long

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: November 16, 2012
Filed: July 25, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Gillman Roddy Long was convicted after a jury trial of two counts of Aggravated Sexual Abuse of a Child in violation of 18 U.S.C. §§ 1153, 2241(c), and

2246(2).  The district court[1] sentenced Long to life imprisonment.  Long now appeals his conviction and sentence.  We affirm.

I.

In early 2008, Long was living in the home of his girlfriend Brenda Brewer and her niece A.P. on the Pine Ridge Indian Reservation.  A.P. alleged that Long sexually assaulted her 40 to 50 times between January and April.  The assaults varied from inappropriate touching to rape.  After A.P. told her grandmother about the assaults, authorities were notified.

The Federal Bureau of Investigation investigated A.P.'s allegations.  On June 4, 2009, FBI Special Agent Sherry Rice interviewed Long at the FBI's Rapid City office.  Agent Rice informed Long that he was not under arrest and would not be arrested that day, that the interview was voluntary, that Long could leave at any time, that the door to the interview room was unlocked, and that Long could stop the interview at any time.  After discussing background information, Long terminated the interview because he did not feel well.

Agent Rice interviewed Long again on June 11, 2009.  She traveled to Long's home and requested that he meet her at a nearby tribal attorney general's office in Pine Ridge.  Long agreed.  When he arrived at the appointed location, Agent Rice informed him he was not under arrest, that she did not have a warrant for his arrest, that he would not be arrested that day, and that he would be leaving at the end of the conversation.  She also told him the interview was voluntary and he could leave at any time.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

At Long's trial, Agent Rice testified for the government about the interview.

Q. How did you begin this interview?

A. I reminded him that we were there to talk to the—talk to him about the allegations that had been made regarding himself and [A.P.], and asked him again when was it that he met Brenda . . . and began a relationship with her.

Q. At one point did you turn his attention specifically to his contact with [A.P.]?

A. Yes.

Q. How did you do that?

A. Well, I was asking him when he lived with Brenda and then I said that we wanted to talk about specifically what happened between he and [A.P.].

Q. What did he say?

A. He described an incident—sorry. I wanted to talk to him about any kind of sexual contact. He described an incident in which he said he was sitting at the computer in the house where he lived with Brenda . . . and described that [A.P.] came up and rubbed her breasts on his back. Then he said that he stood up and pushed [A.P.] away from him.

Q. How did the interview go from there?

A. Well, he wanted to—he wanted to discuss peripheral issues and I said that I really want to just concentrate on the sexual contact between you and [A.P.].

Q. What did he say?

A. He said, "I do not want to incriminate myself. I would like to stop talking."

Q. What did you do?

A. We stopped the interview.

(Trial Tr. 281-82.)

On cross-examination, Long's attorney questioned Agent Rice as follows:

Q. Now, you talked about the fact he said, "I do not want"—at the end of the second statement he said, "I do not want to incriminate myself." You said something along those lines?

A. That's exactly what he said.

Q. You don't know what he meant by that? You don't know what he thinks that word means, correct? You don't know what he meant by it, do you?

A. It seemed pretty clear to me.

Q. Well, you don't know if he maybe thought that just saying he lived there during a time frame was going to get him into trouble, correct?

A. That didn't seem to be the meaning.

Q. Well, he didn't say anything else around it, did he?

A. He said, "I don't want to incriminate myself; I want to stop talking."

Q. Okay. So—but you don't know what he's referring to as what he might say that would incriminate himself, do you? You have no idea what he was referring to?

-4-

A. I had an idea.

Q. Well, you had—you had what you thought it was, but you are not in his brain, right?

A. I am not in his brain.

Q. You don't know what he was thinking about, do you?

A. No.

Q. Because you don't read minds?

A. Correct.

(Trial Tr. 290-91.)

On redirect examination, the government revisited the issue, briefly questioning Agent Rice:

Q. Agent Rice, during the second interview when right before the defendant said, "I don't want to incriminate myself,["] the question immediately before that where you reported you asked him about what happened between him and [A.P.], correct?

A. Yes.

(Trial Tr. 296.)

Before moving to the next witness, the court gave the jury the following instruction in regards to Long's statement that he "did not wish to incriminate himself":

Right before we took our break, you heard testimony from Agent Rice that Gillman Roddy Long, also known as Dave Gillman Long, made a statement to the Federal Bureau of Investigation and it's for you to decide first whether Gillman Roddy Long, also known as Dave Gillman Long, made the statement; and second, if so, how much weight you should give to it. In making these two decisions, you should consider all of the evidence including the circumstances under which the statement may have been made.

(Trial Tr. 305.)

Prior to closing arguments, the court instructed the jury that "the fact that the defendant did not testify must not be discussed or considered by you in any way when deliberating and arriving at your verdict." (Trial Tr. at 408.) Then during the government's rebuttal closing argument, the prosecutor started her argument to the jury this way:

MS. COLLINS: "I don't want to incriminate myself." That was what Gillman Long said to Agent Sherry Rice when she asked him about sexual contact between him and [A.P.]. . . . What was his response? "I don't want to incriminate myself.

Ladies and gentlemen, you can never use against somebody when they invoke their right to remain silent. You can't use that Mr. Long didn't testify in this trial; you cannot use that against him. The law says he has an absolute right to remain silent and he had the right not to talk to Agent Sherry Rice either time she spoke to him, but he chose to speak to her. And when he did that, that gives you the ability to scrutinize what he said. He blames [A.P.] a couple different times; he blamed her saying, "Yeah, she came up behind me." You know what he didn't say? He sure didn't say, "I didn't do it."

MS. COLBATH: I am going to object, Your Honor. He did.

THE COURT: Ladies and gentlemen, you need to rely on what you believe the evidence is and what you find the evidence is.

-6-

MS. COLLINS: And there was a couple different things I am going to rely—ask you to rely on your memory as well that defense counsel said were certainly not correct either. But if you will go back and listen and look at your notes, at no point did Gillman Long say, "I didn't do this," when he was confronted with these accusations. He says, "[A.P.] came up behind me at the computer and put her arms around me, pressing her breasts up against my back." And then he ended the interview by saying, "I don't want to incriminate myself."

We are asking you not to leave your common sense at the door. If somebody doesn't want to incriminate themselves, it means any sort of statement as to that topic that they are being asked for would get them in trouble.

(Trial Tr. 442-43.)

The jury convicted Long of two counts of aggravated sexual abuse and acquitted him of one count. Prior to sentencing, Long argued that the court should depart downward from the Sentencing Guidelines because Agent Rice's testimony about his "incriminate myself" statement constituted a Fifth Amendment violation. Long then filed an out-of-time motion for a new trial, arguing the Fifth Amendment violation and stating his counsel was ineffective for (1) failing to object to the statement, (2) returning to the statement on cross-examination, and (3) failing to file a timely motion for a new trial.

Despite the untimely nature of the motion for a new trial, the district court assumed without deciding that Long had satisfied the excusable neglect requirements for filing an untimely motion and proceeded to address the merits of Long's motion. The district court held that the use of Long's "incriminate myself" statement did not violate his Fifth Amendment rights because at the time he made the statement he was not under a compulsion to speak. For that reason, his trial counsel could not be ineffective for failing to object to the statement, addressing the statement on cross-

examination, or failing to file a motion for a new trial on that basis. The district court later sentenced Long to life imprisonment.

## II.

Long appeals his conviction, arguing (1) the use of his "incriminate myself" statement by the government in its case-in-chief as a confession to the crime violated the Fifth Amendment because the statement was made in an effort to invoke his Fifth Amendment right to remain silent after he had agreed to answer Agent Rice's questions, (2) the district court plainly erred in not finding prosecutorial misconduct when the government referenced Long's decision not to testify at trial, and (3) the district court abused its discretion when it determined by denying the motion for a new trial, that Long had not received ineffective assistance of counsel. He requests that his case be remanded for a new trial.

## A.

Long argues that when he made his pre-arrest, pre-Miranda "incriminate myself" statement during the FBI questioning, he was invoking his privilege against self-incrimination as guaranteed by the Fifth Amendment. Thus, Long argues the statement should not have been admitted in the government's case-in-chief.

Long acknowledges that he did not preserve this issue through a proper objection or motion for mistrial, and therefore our review is for plain error. See United States v. Mickelson, 378 F.3d 810, 819 (8th Cir. 2004) (applying plain error standard to the defendant's challenge of statements admitted into evidence because the defendant did not object to the statements when they were admitted). "To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or

public reputation of judicial proceedings." United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011).

We have yet to directly address the question presented in Long's argument. In United States v. Frazier, 408 F.3d 1102 (8th Cir. 2005), however, we considered "whether the use of [a defendant's] postarrest, pre-Miranda silence during the government's case-in-chief was constitutional." Id. at 1109. We recognized the conflict of authority on the question of whether "the use of postarrest, pre-Miranda silence during the government's case-in-chief constitute[s] an impermissible use of an accused's coerced incriminating 'statement.'" See id. at 1110. We reasoned that because an arrest "is not governmental action that implicitly induces a defendant to remain silent," the defendant "was under no government-imposed compulsion to speak." Id. at 1111. Therefore, "the use of [the defendant's] silence in the government's case-in-chief as evidence of guilt did not violate his Fifth Amendment rights." Id. at 1111.[2]

The government cites United States v. Davenport, 929 F.2d 1169 (7th Cir. 1991), wherein the Seventh Circuit held "[t]he privilege against self-incrimination is not a privilege to attempt to gain an advantage in the criminal process, whether in its investigatory or its trial stage, by selective disclosure followed by a clamming up." Id. at 1174; see also United States v. Jumper, 497 F.3d 699, 705 (7th Cir. 2007) (limiting Davenport to noncustodial questioning by authorities). In Davenport, the

---

[2]Shortly after deciding Frazier, we reaffirmed that decision in United States v. Osuna-Zepeda, 416 F.3d 838, 844 (8th Cir. 2005). After this case was submitted, the Supreme Court granted certiorari in Salinas v. Texas, 133 S. Ct. 2174 (2013), "to resolve a division of authority in the lower courts over whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief." Id. at 2179. The Court did not reach the question, however, because it held the defendant's silence in response to a police officer's question did not invoke the privilege. Id. at 2179-80.

defendants were told that they did not have to answer an Internal Revenue Service agent's questions; however, they agreed to answer the questions, "no doubt hoping that they could satisfy [the agent] and ward off further investigation." Davenport, 929 F.2d at 1174. The Seventh Circuit reasoned that "once [defendants] start[] down this path of self-exculpation, any statement they made—including 'I won't tell you'—was fair game." Id. We have acknowledged the Davenport reasoning. See United States v. Shoff, 151 F.3d 889, 893 (8th Cir. 1998).

We conclude that this issue is determined by application of the elements of plain error review. Accordingly, in light of our decision in Frazier and our citing with approval the decision in Davenport, even if it was error for the government to admit Long's pre-arrest, pre-Miranda "incriminate myself" statement as part of the government's case-in-chief—a question we do not reach—it was certainly not an error that is "clear or obvious under current law." Poitra, 648 F.3d at 887. Accordingly, the district court did not plainly err when it failed to sua sponte strike the testimony of Agent Rice or the closing argument reference to the statement by the government.

B.

Long's second argument on appeal is that the government improperly called the jury's attention to Long's election not to testify at trial. Long maintains that the prejudicial impact of this error was enhanced by the government's coupled reference to his "incriminate myself" statement. Because Long's counsel failed to object to the reference on the constitutional grounds now being argued, our review is for plain error. See United States v. Davis, 534 F.3d 903, 914 (8th Cir. 2008) ("If the defendant does not object to an allegedly improper statement [made by the government in closing], . . . the alleged error is not properly preserved for appellate review, with the result that we review only for plain error and reverse only under exceptional circumstances.").

-10-

In Griffin v. California, 380 U.S. 609 (1965), the Supreme Court held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Id. at 615. Although this holding appears broad and would seem to prohibit any direct reference by the court or prosecution concerning a defendant's decision not to testify, subsequent cases have given a narrower interpretation of the Griffin holding. For instance, in Lakeside v. Oregon, 435 U.S. 333 (1978), the Court held that a defendant's Fifth Amendment rights were not violated when the court, over objections from defense counsel, instructed the jury that it could not draw any adverse inferences from the defendant's decision not to testify. Id. at 340-41. Later in United States v. Robinson, 485 U.S. 25 (1988), the Court declined to give Griffin the broad reading "that any 'direct' reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment." Robinson, 485 U.S. at 31. Instead, the Court emphasized that the context of the statement must be taken into consideration and that the Fifth Amendment is violated when the prosecutor "treat[s] a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt." Id. at 34.

Here, the government's comment merely rephrased the instruction the court presented to the jury moments before closing arguments and was not presented in a context to suggest that the jury construe Long's decision not to testify against him. Rather, the government made the comment to contrast the prohibition on considering Long's decision not to testify with the consideration of his statement to Agent Rice. As such, we hold the district court did not clearly err in allowing the statement during closing argument. Furthermore, even if it was error which was clear, we do not see how Long suffered prejudice by this statement or how the error threatened the fairness, integrity, or public reputation of the judicial proceedings. Poitra, 648 F.3d at 889 (discussing elements of plain error review); see also United States v. Robinson, 627 F.3d 941, 956 (4th Cir. 2010) ("Plain error review exists to correct only the most grievous of unnoticed errors."). Accordingly, we find that the district court did not

plainly err in failing to sua sponte strike the government's closing argument comment about Long's election not to testify.

C.

Finally, Long argues he received ineffective assistance of counsel based on his trial attorney's (1) failure to object to the "incriminate myself" statement, (2) questioning about the "incriminate myself" statement in the cross-examination of Agent Rice, and (3) failure to object to the government's closing argument comment on Long's decision not to testify. "Generally, ineffective assistance of counsel claims are better left for post-conviction proceedings" under 28 U.S.C. § 2255. United States v. Cook, 356 F.3d 913, 919 (8th Cir. 2004). We will not hear ineffective assistance claims on direct appeal unless the record is fully developed, see United States v. Orr, 636 F.3d 944, 950 (8th Cir. 2011), our failure to act would be a "plain miscarriage of justice," or the counsel's errors are "readily apparent," United States v. Ramirez–Hernandez, 449 F.3d 824, 827 (8th Cir. 2006).

Here, our decision to affirm Long's conviction is based largely on the plain error standard of review. We employed this standard of review because the defense failed to object to the relevant portions of the trial—the "incriminate myself" statement during Agent Rice's testimony and the government's closing argument reference to Long's decision not to testify. As such, to evaluate the claim of ineffective assistance of counsel, it will be necessary to develop facts outside of the record presently before the court, such as whether the decision not to object was due to trial strategy. Thus, we decline to consider Long's ineffective assistance of counsel claim in this direct appeal of his conviction.

III.

Accordingly, we affirm Long's conviction and sentence.

_____