**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4416**

_____

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

GREGORY GRAVES,

                    Defendant - Appellant.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Peter J. Messitte, Senior District
Judge.  (8:10-cr-00164-PJM-1)

_____

Argued: October 31, 2013              Decided:  January 13, 2014

_____

Before MOTZ and AGEE, Circuit Judges, and Joseph F. ANDERSON,
Jr., United States District Judge for the District of South
Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Anderson wrote the
opinion, in which Judge Motz and Judge Agee joined.

_____

**ARGUED:** Meghan Suzanne Skelton, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Greenbelt, Maryland, for Appellant. Steven Edward
Swaney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt,
Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public
Defender, Martin G. Bahl, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Baltimore, Maryland, for Appellant.  Rod J. Rosenstein, United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

ANDERSON, District Judge:

Following a trial in the United States District Court for the District of Maryland, Southern Division, a jury found Gregory Graves guilty of robbery, 18 U.S.C. § 1951, and two weapons offenses, 18 U.S.C. §§ 922(g)(1), 924(c). On appeal, Graves argues that the district court erred by (1) denying his motion to suppress statements that he made to the police; (2) denying his motion to dismiss the indictment because of a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174; and (3) admitting Graves' prior robberies as evidence under Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). For reasons set forth below, we affirm.

I.

In the early morning hours of December 31, 2009, Graves walked into a 7-Eleven store on Central Avenue in Capitol Heights, Maryland. Graves pointed a shotgun at the cashier, demanded money from the register, and, subsequently, fled on foot with an unknown amount of money. Graves did not wear a mask during the robbery, and a store surveillance camera captured an image of his face. A week later, in the evening of January 6, 2010, Graves entered another 7-Eleven store, on Boone's Lane in District Heights, Maryland. As before, Graves demanded money from the cash register, but this time he wore a black ski mask and brandished a knife. When the employees

3

refused, Graves walked behind the counter, tried unsuccessfully to open the register, and then fled. An employee later gave the police a description of the car in which Graves left. During the investigation that ensued, a detective found in the state's vehicle database a 1985 Mercury registered to Graves, and that car matched the description provided by the employee of the Boone's Lane store. Based on Graves' driver's license photograph, the detective also identified Graves as the person who had robbed the Central Avenue store.

On January 9, 2010, law enforcement authorities arrested Graves and transported him to a police station in Prince George's County, Maryland. At the police station, Graves was placed in an interrogation room. After about an hour of waiting, Graves knocked on a table and called out for an officer. In response, a detective from another division, whose desk was near the interrogation room, opened the door. Video-audio surveillance equipment captured some of their exchange:

Detective: Can I help you?

Graves: Excuse me, when do I . . . see about a phone call?

Detective: When do you get a phone call?

Graves: Yeah . . .

Detective: Um, does somebody know you're . . . ?

Graves: . . . attorney.

Detective: . . . Okay, I will let them know. Okay?

4

Graves:  Thank you, ma'am.[*]

Shortly after this exchange, two other detectives entered the interrogation room.  During questioning, Graves signed a form waiving his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and admitted both orally and in writing that he had committed the robbery at Central Avenue and the attempted robbery at Boone's Lane.  As a result of Graves' statements, the police later recovered a shotgun behind Graves' home.

A grand jury returned an indictment on April 12, 2010, charging Graves with two counts of obstructing, delaying, and affecting, and attempting to obstruct, delay, and affect, commerce by robbery, in violation of 18 U.S.C. § 1951; one count of possessing, using, and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); and one count of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Graves made his initial appearance on May 5, 2010, and was arraigned on May 17, 2010.  On June 1, 2010, Graves filed a motion to suppress the statements he had made to the police detectives during the interrogation after his arrest, arguing

---

[*] After watching the video during a motion's proceeding, the detective testified that she did not have an independent recollection of having the conversation with Graves.

5

that he had invoked his right to counsel when he asked the first detective for the opportunity to make a telephone call.

Graves' motion to suppress, as well as other motions filed on June 21, 2010, remained pending for more than a year, until September 30, 2011. On that date, the district court held an evidentiary hearing and denied Graves' motions. With respect to the motion to suppress Graves' statements, the court stated that a suspect's request for an attorney must be honored, but that such a request must be "clear and unambiguous and reasonably understood. The court found that Graves "at best . . . was ambiguously asserting a right to consult his counsel."

During the same hearing, the parties agreed that the trial, which was scheduled to begin on November 8, 2011, would take three to four days. The district court noted that it needed to get the trial done that week because of the district judge's upcoming absence. On October 21, 2011, Graves filed a *pro se* motion to dismiss the indictment alleging violations of the Speedy Trial Act.

On November 1, 2011, during a conference call among the parties and the district court, the Government indicated that the trial likely would take longer than anticipated, according to a memorandum from the district court dated that same day. If the trial did not finish in three days, the district court wrote, it would run into a federal holiday as well as the

6

district judge's scheduled travel the following week. The result would be a lengthy delay in the middle of the trial. Acknowledging that Graves opposed any continuance in general, the district court scheduled a status hearing for November 4, 2011, to consider whether to postpone the trial.

At the status hearing on November 4, 2011, the parties and the district court discussed postponement and its effect on Graves' rights to a speedy trial:

> Government: [W]ith respect to the speedy trial clock, our calculations show that we should be fine currently. We have motions that have been pending for the majority of the time that this case has been filed, and there's currently a motion before the Court. I do believe there are actually additional motions that need to be adjudicated with respect to [Rule] 404(b) and possibly the admission of the defendant's videotaped statements, which, if the defendant doesn't file a motion in limine, the government will be filing motions in limine with respect to that evidence as well.

> Counsel for Graves: Your Honor, as we discussed during the telephone conference, I would object on behalf of Mr. Graves to the continuance for no other reason than this case has been around for quite a while. . . . for well over a year. . . . I understand the logistical difficulties with the schedule the Court has, but Mr. Graves also has pending, as the Court knows, a Motion to Dismiss the Indictment on speedy trial grounds, so I think all indications . . .

> The Court: [B]efore you go much further . . . it does help for speedy trial purposes to have some motions pending, but there's no reason we can't have a hearing on the Motion to Dismiss next week. . . . I have time

7

to address at least one of these motions without knocking all of them off the docket.

Counsel for Graves: That would be fine, Your Honor. And I would indicate to the Court, as government counsel has, that there is the [Rule] 404(b) issue [on] which either I or government counsel will have to file a motion in limine.

The Court: Well, obviously, that would extend the speedy trial clock anyway . . .

At the conclusion of the hearing, the district court rescheduled the trial for February 21, 2012, but noted that it could hear arguments on motions before trial as long as a motion remained on the docket for speedy trial purposes.

On November 8, 2011, the district court heard arguments on Graves' *pro se* motion to dismiss, which it denied the following day.  At the hearing, the district court also asked the parties about how much time remained on the speedy trial clock:

Government: I believe there are about 25 more days remaining on the speedy trial clock. . . .  [E]xpired time totals about 45 days.

The Court: What other motions are contemplated?

Government: Either the defendant or the government is going to file a [Rule] 404(b) motion relating to the admissibility of prior convictions.

The Court: How soon is the government going to file its motion?

Government: We intend to file it today, Your Honor.

. . .

8

The Court: And the government's motion would affect the clock?

Government: Yes, Your Honor.

At the end of the hearing, the district court reiterated, "So, the court will deny the motion to dismiss. And I'm assuming there will be further motions filed today or immediately" tolling the speedy trial clock.

Two days later, on November 10, 2011, the Government filed a motion *in limine* to admit Graves' prior convictions as evidence under Rule 404(b). Graves had been convicted of robbing three 7-Eleven stores over a three-day period in March 2001, including the store on Central Avenue, which was the subject of count one of the indictment. The motion *in limine* remained pending until the first day of trial.

On February 15, 2012, six days before the case was to be called for trial, Graves filed a second motion to dismiss the indictment again alleging violations of the Speedy Trial Act. For the first time, Graves argued that the district court's reasons for postponing the trial were insufficient for purposes of the Speedy Trial Act and that the Government's motion *in limine* had not tolled the speedy trial clock.

On the first day of trial, on February 21, 2012, the district court heard arguments before jury selection on Graves' second motion to dismiss for speedy trial violations and on the

9

Government's motion *in limine* to admit evidence of Graves' prior robberies under Rule 404(b).  After reviewing Fourth Circuit case law, the district court denied Graves' motion to dismiss, finding that the Government's Rule 404(b) motion was a "pretrial motion" that tolled the Act's 70-day time period.  The district court granted the Government's motion, deciding that Graves' past robberies were admissible under Rule 404(b) as relevant to identity.  After three days of trial, the jury found Graves guilty on all four counts in the indictment.  On June 1, 2012, the district court sentenced Graves to 30 years in prison.

II.

On appeal, Graves challenges his conviction on multiple grounds.  We assess his contentions in turn.

A.

Graves' first claim of error is that the district court should have granted the motion to suppress his statements. Specifically, Graves asserts that he invoked his constitutional right to counsel when he asked to make a telephone call before being questioned by the police, and that the court below applied the wrong legal standard in finding that he did not invoke that right.  We review the district court's legal conclusions underlying its suppression determination *de novo* and its factual findings for clear error.  <u>United States v. Sterling</u>, 283 F.3d

216, 218 (4th Cir. 2002). For reasons set forth below, we reject Graves' argument.

While the text of the Fifth Amendment to the United States Constitution contains no specific guarantee of counsel, the constitutional protection against compelled self-incrimination long has been held to include a right to counsel during custodial interrogations. See, e.g., Miranda, 384 U.S. at 478–79. Once a suspect in custody asserts the right to counsel, the current "interrogation must cease," and the police may not approach the suspect for further interrogation "until counsel has been made available to him." Edwards v. Arizona, 451 U.S. 477, 484–85 (1981). If the police, subsequently, initiate interrogation without counsel present and without a break in custody, the suspect's statements "are presumed involuntary and therefore inadmissible as substantive evidence at trial." McNeil v. Wisconsin, 501 U.S. 171, 177 (1991). However, police are not required to cease questioning "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." Davis v. United States, 512 U.S. 452, 459 (1994) (emphasis in original). "Rather, the suspect must unambiguously request counsel." Id.

11

With this right under the Fifth Amendment as a backdrop, Graves argues that the heightened standard for invoking his right to counsel, as established in Davis, applies only when a suspect has been advised of, and waived, his Miranda rights. Graves contends that the district court committed reversible error when it required a clear and unequivocal demand for counsel even though Graves had neither been advised of, nor waived, his Miranda rights. However, in making the argument that a less demanding standard applies before a suspect waives his Miranda rights, Graves relies on a decision by the Ninth Circuit Court of Appeals, since vacated by the Supreme Court. Sessoms v. Runnels, 691 F.3d 1054, 1055 (9th Cir. 2012) cert. granted, judgment vacated sub nom. Grounds v. Sessoms, 133 S. Ct. 2886 (2013). The Court has remanded Sessoms to the Ninth Circuit for further consideration in light of Salinas v. Texas, 133 S.Ct. 2174 (2013). In Salinas, police interrogated a suspect before he was placed in custody and without Miranda warnings. Id. at 2177. Drawing no distinction between the invocation requirements before and after custody and Miranda warnings, the Court found no Fifth Amendment violation and held that the suspect did not expressly invoke the privilege against self-incrimination in response to the questions. Id. at 2178.

In the present action, the district court stated that a suspect's request for counsel must be "clear and unambiguous and

12

reasonably understood," and found that Graves "at best . . . was ambiguously asserting a right to consult his counsel." We agree and, accordingly, find no error.

## B.

Graves' next claim of error is that the district court should have dismissed the indictment pending against him because of a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 ("the Act"). Specifically, he contends that the district court's reasons for postponing the trial were insufficient for purposes of the Act and that the government's motion *in limine* was not a pretrial motion that tolled the speedy trial clock. We need not address the merits of this claim because we find that Graves ratified the violation of the Act: First, Graves himself suggested to the district court that the Government's motion *was* a pretrial motion capable of tolling the speedy trial clock. Second, Graves represented that he would file a motion tolling the clock if, for some reason, the Government failed to do so.

Under the Act, the trial of a criminal defendant must "commence within seventy days from the filing date . . . [of] the indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). If a defendant is not brought to trial during that 70-day

13

period, the district court must dismiss the indictment on motion of the defendant, though it may choose to do so with or without prejudice. 18 U.S.C. § 3162(a)(2); United States v. Henry, 538 F.3d 300, 304 (4th Cir. 2008).

In calculating the time within which a defendant's trial must begin, however, the Act enumerates certain exceptions and excludes, among others, any delays for which the district court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Also excluded are delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). "The plain terms of the statute . . . exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not." Henderson v. United States, 476 U.S. 321, 326 (1986).

Graves and the Government do not dispute that the original date for the trial, November 8, 2011, fell well within the 70-day limit imposed by the Act. Instead, the time period at issue is between November 9, 2011, when the district court denied Graves' first motion to dismiss for violating the Act, and February 15, 2012, when Graves filed a second motion to dismiss.

14

Without any exclusions, that 98-day period placed the trial date beyond the limits set by the Act.

Graves argues that the Government's motion *in limine* to admit evidence under Rule 404(b), filed on November 10, 2011, and pending until the first day of trial, on February 21, 2012, was a notice of the Government's intent to use evidence, under Rule 12(b)(4) of the Federal Rules of Criminal Procedure, not a pretrial motion that would toll the speedy trial clock. Graves had advanced this argument before the district court in his second motion to dismiss for violating the Act.

However, before Graves filed that second motion to dismiss on February 15, 2012, the record shows that he endorsed the view that the Government's submission was a pretrial motion that would toll the 70-day limit imposed by the Act. Moreover, Graves represented that he would file an appropriate pretrial motion himself in the event that the Government failed to do so. At the hearing on November 4, 2011, which involved the possibility of postponing the trial, the district court explicitly discussed the status of the speedy trial clock, and both parties indicated that either of them would be filing a motion *in limine* that would toll the time under the Act. Specifically, Graves' counsel stated: "[T]here is the [Rule] 404(b) issue [on] which either I or the government counsel will have to file a motion in limine." At the hearing on Graves' *pro*

*se* motion to dismiss on November 8, 2011, counsel for Graves raised no objections when the Government told the district court that Graves or the Government would file a Rule 404(b) motion that would toll the Act. When the district court at the end of the hearing reiterated that the motion would toll the speedy trial clock, counsel for Graves again voiced no objections. Then, just six days before trial, Graves filed his second motion to dismiss arguing that the Government's motion *in limine* was not a pretrial motion for purposes of the Act and that the speedy trial clock had been ticking since November 8, 2011, without any exclusions.

While criminal defendants cannot prospectively waive their rights to a speedy trial under the Act, we long have recognized an exception that prevents defendants "from using the [Act] as a sword and a shield." See, e.g., United States v. Keith, 42 F.3d 234, 238–39 (4th Cir. 1994). In Keith, we endorsed a rule that precludes a defendant from "sandbagging the court and the government by agreeing to a continuance and then later urging a dismissal using the time covered by the continuance." Keith, 42 F.3d at 239. If we adopt Graves' argument, we would be permitting another sort of sandbagging, by allowing a defendant to imply that a pending motion tolls the speedy trial clock but then to seek dismissal on that precise issue. Indeed, Graves' counsel did more than simply imply that the clock would be

16

tolled: He represented that he would file a pretrial motion tolling the clock should the Government fail to do so. Other courts have declined to endorse similar strategies. United States v. Shetty, 130 F.3d 1324, 1331 (9th Cir. 1997) ("[W]e will not sanction the use of the [Act] as a 'sandbag,' held for 540 days and then thrown at the district court ten days before trial."); United States v. Gambino, 59 F.3d 353, 360 (2d Cir. 1995) (The Act is "not to be mistaken for the rules of a game where defense counsel's cunning strategy may effectively subvert Congress' goal of implementing sound trial management."); United States v. Baskin-Bey, 45 F.3d 200, 204 (7th Cir. 1995) (A defendant cannot "implicitly agree to the government's request that time be excluded because of [the defendant's] request, and then try to sandbag the government by insisting that the time be counted against the speedy trial clock."); United States v. Ciancola, 920 F.2d 1295, 1298 (6th Cir. 1990) (The Act does not "provide defendants with tactics for ensnaring the courts into situations where charges will have to be dismissed on technicalities.") (internal citation omitted).

We recognize that an overly broad application of the exception could swallow the Act's non-waiver rule. Here, however, counsel for Graves did not alert the district court or the Government that he questioned the motion *in limine*'s effect on the speedy trial clock. Rather, he affirmatively represented

17

that should the Government fail to file a motion tolling the clock, he would do so himself. As a result, we hold that Graves acquiesced that the Government's motion *in limine* was a pretrial motion, tolling the speedy trial clock. Accordingly, we find no error.

C.

In a final claim of error, Graves argues that the district court committed reversible error in admitting under Rule 404(b) evidence of his three prior robberies of 7-Eleven stores in March 2001, including the Central Avenue store at issue in this case. Specifically, Graves submits that the lower court erred in admitting those prior offenses under Rule 404(b)'s identity exception because the details of those offenses were not sufficiently distinctive. We review the district court's decision to admit evidence under Rule 404(b) for abuse of discretion, United States v. Basham, 561 F.3d 302, 325 (4th Cir. 2009), and will not find that it abused its discretion unless the decision "was arbitrary and irrational." United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002). For the reasons set out below, we reject Graves' contention.

Rule 404(b) prohibits evidence of "'other crimes, wrongs, or acts'" solely to prove a defendant's bad character, but a district court may admit such evidence "'for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

18

knowledge, identity, or absence of mistake or accident.'" Basham, 561 F.3d at 326 (quoting Fed. R. Evid. 404(b)). Rule 404(b) is a rule of inclusion, "admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Young, 248 F.3d 260, 271–72 (4th Cir. 2001) (internal quotation marks omitted).

For a court to admit prior bad acts under Rule 404(b), the proffered evidence must be (a) "relevant to an issue other than character," including identity or motive; (b) "necessary to prove an element of the crime charged," or to prove context; and (c) reliable. United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011) cert. denied, 132 S.Ct. 468 (2011) (internal citations omitted). In addition, the probative value of the evidence must not be substantially outweighed by a danger of unfair prejudice. See Fed. R. Evid. 403.

After weighing the possibility of unfair prejudice to Graves, the district court held that evidence of the 2001 robberies was relevant to establish identity in light of the similarities between those offenses and the robbery of the Central Avenue store and the attempted robbery of the Boone's Lane store. Concluding that the district court's decision to admit the evidence under Rule 404(b) was neither arbitrary nor irrational, we find no error.

19

III.

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED