NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2019-0322

THE STATE OF NEW HAMPSHIRE

v.

JOSHUA POULIOT

Argued: September 9, 2020
Opinion Issued: January 13, 2021

Gordon J. MacDonald, attorney general (Zachary L. Higham, attorney, on the brief and orally), for the State.

Anthony J. Naro, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J. The defendant, Joshua Pouliot, appeals convictions, following a jury trial, on three counts of aggravated felonious sexual assault, see RSA 632-A:2 (Supp. 2019), and one count of felonious sexual assault, see RSA 632-A:3 (Supp. 2019). On appeal, the defendant argues that the Superior Court (Delker, J.) erred by denying his motion to exclude evidence that he answered "no comment" in response to police questioning about the sexual assaults during a non-custodial interview over the phone. He contends that, through his "no comment" response, he invoked his Fifth Amendment privilege against compelled self-incrimination. See U.S. CONST. amends. V, XIV. He also argues that the trial court may have erred when, after conducting an in

camera review of confidential records pertaining to the victim, the court ordered that only certain portions of those records be disclosed to the defendant. We affirm the trial court's denial of the defendant's motion to exclude, and remand to the trial court for further in camera review of the records.

The following facts are taken from the trial court's order denying the defendant's motion to exclude, are established by the evidence submitted at the hearing on the motion, or are otherwise undisputed. The defendant and the victim are cousins, and the defendant is approximately six years older than the victim. During the summer of 2017, the victim reported that the defendant had sexually assaulted him multiple times when the victim was between 9 and 13 years old.

In August 2017, an officer for the Londonderry Police Department began investigating the allegations against the defendant. At the time of the investigation, the defendant was attending college in Rochester, New York. The officer contacted the defendant's parents and asked them to have the defendant call him. Thereafter, the defendant called the police station to speak with the officer. The officer then interviewed the defendant.

At the start of the interview, the defendant confirmed his name, address, date of birth, and that he was the victim's cousin. Approximately two to five minutes into the interview, the officer asked the defendant about an allegation that he had sexually assaulted the victim. He responded, "No comment." The officer then asked the defendant additional questions about his home and family life, such as whether he was safe at home and whether he was the only child staying at his parents' house. He confirmed that those details were true.

After the initial "no comment" response, the officer asked the defendant multiple times about the sexual assault allegations. Each time, the defendant responded either by remaining silent or stating that he had "nothing else to say." On each occasion when the defendant refused to answer questions about the allegations, the officer redirected the conversation and asked questions about the defendant's family, school, and social life. The defendant willingly answered those questions.

The interview ended when, after approximately 40 minutes, the officer again asked the defendant about the sexual assault allegations. The defendant stated, "I have nothing more to say," and hung up the phone.

Before trial, the defendant moved to exclude his "no comment" statement, as well as other evidence that he did not respond to the officer's questions about the sexual assaults. He argued that use of his pre-arrest "silence" in the State's case-in-chief would violate his rights under Part I, Article 15 of the State Constitution and the Fifth and Fourteenth Amendments

2

to the Federal Constitution.  See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV.  During the first day of trial, the trial court held an evidentiary hearing on the motion.  The officer, who was the only witness to testify during the hearing, recounted his interview with the defendant.

The trial court issued an oral ruling from the bench, granting the motion in part and denying it in part.  First, the court observed that the defendant had refused to answer only some of the officer's questions.  The court correctly noted that whether a defendant may "selectively invoke" the Fifth Amendment "right to silence" — refusing to answer certain questions, while answering others — is an "unsettled area of the law."  Compare Hurd v. Terhune, 619 F.3d 1080, 1086-87 (9th Cir. 2010) (stating that, after a suspect has received Miranda warnings, the suspect "may remain selectively silent by answering some questions and then refusing to answer others without taking the risk that his silence may be used against him at trial"), with Dillon v. Smith, No. 07-CV-10728 (ALC)(RLE), 2015 WL 13745783, at *12 (S.D.N.Y. Dec. 22, 2015) ("While some circuit courts support the view that Fifth Amendment rights may be selectively invoked during a police interrogation after a defendant has voluntarily responded to law enforcement's questions[,] neither the Supreme Court, nor the Second Circuit, has adopted selective invocation of the right to remain silent." (footnote omitted)).  In its analysis, the trial court assumed that the defendant may selectively invoke the right to remain silent.

The court granted the defendant's motion in regard to his statements that he had "nothing else to say" and "nothing more to say," and with respect to hanging up the phone.  The court denied the motion with respect to the defendant's "no comment" statement, and his silence in response to certain questions, ruling that those responses were not invocations of the right to remain silent.  Following a three-day trial, the jury convicted the defendant.

The trial court later issued a written order which "supplement[ed] its oral ruling."  The court ruled that the defendant had waived his State Constitutional argument, and limited its analysis to the defendant's claim under the Federal Constitution.  The court found that the defendant was not in custody during the phone interview, and that he was not provided with Miranda warnings.  See Miranda v. Arizona, 384 U.S. 436, 444 (1966) (stating that, before government officers may interrogate a person who is in custody, officers must warn the person that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney").  The court ruled that, when a defendant is not in custody and does not receive Miranda warnings, in order for the defendant's invocation of the right to remain silent to be effective, it must be unambiguous.  The court explained that it had denied the defendant's motion with respect to his silence and "no comment" statement because those responses were not unambiguous invocations of his Fifth Amendment rights.  This appeal followed.

We first address the defendant's argument that his "no comment" statement was an effective invocation of the Fifth Amendment privilege against compelled self-incrimination. The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The privilege against compelled self-incrimination is "an exception to the general principle that the Government has the right to everyone's testimony." Garner v. United States, 424 U.S. 648, 658 n.11 (1976). "[A] witness who desires the protection of the privilege must claim it at the time he relies on it." Salinas v. Texas, 570 U.S. 178, 183 (2013) (quotations and ellipsis omitted) (plurality opinion).

At the outset, we note, as did the trial court, that the defendant was not in custody at the time of the interview, and that he did not receive Miranda warnings. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (stating that government officers are not required to provide Miranda warnings before interrogating a person who is not in custody). Although we have held that, to determine whether a defendant invoked his rights during a post-Miranda custodial interrogation, "we examine his statements under the totality of the circumstances," State v. Lynch, 169 N.H. 689, 692-93 (2017), we have not yet addressed whether we consider the totality of the circumstances when determining whether a defendant has effectively invoked his rights during a pre-Miranda non-custodial interrogation. The United States Supreme Court has, however, recognized that, regardless of whether a defendant is in custody or has received Miranda warnings, the material factors are similar when a court determines whether the defendant has effectively invoked his Fifth Amendment rights during police questioning. See Salinas, 570 U.S. at 188-190. Therefore, applying the principles in our post-Miranda custodial interrogation cases, we proceed to examine the defendant's pre-Miranda non-custodial statements under the totality of the circumstances.

We review a trial court's findings concerning which words a defendant used to invoke his rights under the clearly erroneous standard. Lynch, 169 N.H. at 693. Whether the defendant's words constitute an invocation of his rights presents a question of law, and our review is de novo. Id. Here, because the defendant does not challenge any of the trial court's factual findings, we review de novo the issue of whether he effectively invoked the privilege against compelled self-incrimination. See id.

It is well-settled that, in the context of a post-Miranda custodial interrogation, "an accused who wants to invoke his or her right to remain silent . . . [must] do so unambiguously." Berghuis v. Thompkins, 560 U.S. 370, 374-75, 381-82 (2010); see also Davis v. United States, 512 U.S. 452, 458-59 (1994) (applying unambiguous invocation standard for post-Miranda custodial assertions of the right to counsel); Lynch, 169 N.H. at 699 (stating that, for a defendant to effectively invoke his Miranda rights, he must "unambiguously

4

assert his right to remain silent or his right to counsel"). The defendant acknowledges that, in the post-<u>Miranda</u> custodial interrogation context, an invocation of rights must be unambiguous in order to be effective; nonetheless, he argues that a materially lower standard of clarity applies to a defendant's invocation of rights in a pre-<u>Miranda</u> non-custodial interrogation. We disagree.

The United States Supreme Court has held that, even when a person is not in custody and does not receive <u>Miranda</u> warnings, in order to benefit from the Fifth Amendment privilege against compelled self-incrimination, the person must "expressly invoke the privilege." <u>Salinas</u>, 570 U.S. at 181. In <u>Salinas</u>, the defendant voluntarily answered a police officer's questions about a murder. <u>Id</u>. The defendant was not in custody and had not received <u>Miranda</u> warnings. <u>Id</u>. Although the defendant answered most of the officer's questions, in response to one query, the defendant was silent and made gestures, such as looking down and biting his lip. <u>See</u> <u>id</u>. at 182. After a few moments of silence, the officer asked additional questions, which the defendant answered. <u>Id</u>.

In a plurality opinion by Justice Alito, joined by Chief Justice Roberts and Justice Kennedy, the Court ruled that the defendant's silence was not an invocation of the Fifth Amendment privilege against compelled self-incrimination. <u>See</u> <u>id</u>. at 181, 191. Justice Alito explained that a defendant is required to expressly invoke the privilege in order to benefit from it because the express invocation requirement "ensures that the Government is put on notice when a witness intends to rely on the privilege," and "gives courts tasked with evaluating a Fifth Amendment claim a contemporaneous record establishing the witness' reasons for refusing to answer." <u>Id</u>. at 183-84. Justice Alito further explained that, even if reliance on the Fifth Amendment privilege was the most likely explanation for the defendant's silence, the defendant's silence was not an invocation of the privilege because "[the defendant] alone knew why he did not answer the officer's question." <u>Id</u>. at 189. Justice Alito elaborated:

> To be sure, someone might decline to answer a police officer's question in reliance on his constitutional privilege. But he also might do so because he is trying to think of a good lie, because he is embarrassed, or because he is protecting someone else. Not every such possible explanation for silence is probative of guilt, but neither is every possible explanation protected by the Fifth Amendment.

<u>Id</u>. Ultimately, Justice Alito concluded that the defendant's silence was not an express invocation of the privilege because "[a] witness' constitutional right to refuse to answer questions depends on his reasons for doing so, and courts

need to know those reasons to evaluate the merits of a Fifth Amendment claim."[1]  Id.

We therefore apply the "express invocation" standard set forth in Justice Alito's plurality opinion.  As Justice Alito observed, this standard is similar to the unambiguous, unequivocal invocation requirements that apply in the post-Miranda custodial interrogation context.  Salinas, 570 U.S. at 190; see Berghuis, 560 U.S. at 381 (post-Miranda invocations of the right to remain silent); Davis, 512 U.S. at 459, 462 (post-Miranda invocations of the right to counsel).  As have other courts, we recognize that even a pre-Miranda invocation of rights must be unambiguous to be effective.  See United States v. Medunjanin, 752 F.3d 576, 580, 587-88 (2d Cir. 2014) (ruling that defendant did not clearly and unambiguously invoke the right to counsel when, before receiving Miranda warnings, defendant asked officers whether his lawyer had been notified that a search warrant had been executed against him); United States v. Graves, 551 F. App'x 680, 685 (4th Cir. 2014) (describing Salinas as "[d]rawing no distinction between the invocation requirements before and after custody and Miranda warnings," and ruling that defendant's pre-Miranda assertion of the right to counsel was not effective because it was not clear and unambiguous) (unpublished opinion).

In addition, we assume without deciding, as did the trial court, that a defendant may selectively invoke the Fifth Amendment privilege.  As the trial court noted, assuming selective invocation is more beneficial to the defendant.

The defendant argues that his "no comment" statement is an effective invocation of the privilege because, when taken in context with his subsequent refusals to answer questions about the sexual assault allegations, it is evident that he did not wish to discuss the allegations.  The defendant notes that "[a]t no time during the conversation" did he answer questions about the allegations.  He also asserts that "[s]aying 'no comment' is a culturally-prevalent way to express a refusal to answer questions."

---

[1] Justice Thomas authored an opinion, joined by Justice Scalia, concurring in the judgment. Justices Thomas and Scalia would have ruled that, even if the defendant had expressly invoked the privilege against compelled self-incrimination, a prosecutor's use of that invocation as substantive evidence of the defendant's guilt would not violate the Fifth Amendment.  See Salinas, 570 U.S. at 191-92 (Thomas, J., concurring).  Because Justice Alito's plurality opinion provides the narrowest grounds for the Court's decision, we follow the reasoning of the plurality.  See Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotation and ellipsis omitted)); see also United States v. Wilchcombe, 838 F.3d 1179, 1191 (11th Cir. 2016) (describing the reasoning from Justice Alito's opinion as the holding in Salinas); Abby v. Howe, 742 F.3d 221, 228 (6th Cir. 2014) (same); United States v. Long, 721 F.3d 920, 925 n.2 (8th Cir. 2013) (same).

Although we agree that the defendant's "no comment" response demonstrates that he did not wish to answer questions about the allegations, that does not mean that the response was an unambiguous, unequivocal invocation of the Fifth Amendment privilege against compelled self-incrimination. Here, as in Salinas, "[the defendant] alone knew why he did not answer the officer's question," and we are without a "contemporaneous record establishing the [defendant's] reasons for refusing to answer." Salinas, 570 U.S. at 183-84, 189. Conduct indicating that a defendant is uncomfortable or apprehensive about speaking with the police about a particular topic, without more, is not an unambiguous invocation of the right to remain silent — particularly when the defendant continues to speak with the officer and does not affirmatively state that he wishes for the interview to end. See Berghuis, 560 U.S. at 374-76, 382 (ruling that defendant did not invoke the right to remain silent under Miranda when, for nearly three hours, the defendant was largely silent and gave only very brief responses to officers' questions); State v. Watson, 170 N.H. 720, 724, 727 (2018) (ruling that, under the State and Federal Constitutions, defendant did not invoke the right to remain silent under Miranda because, although the defendant "indicated that he was not comfortable speaking" about a particular topic, and displayed "obvious apprehension at going forward," he "neither said that he wanted to remain silent nor that he did not want to speak with the police" (quotations omitted)).

Here, although the defendant ultimately ended the interview by hanging up the phone, he did not do so until at least 30 minutes after his "no comment" statement. When he offered his "no comment" response, the defendant did not say that he wanted to remain silent or that he did not wish to speak with the officer. See Berghuis, 560 U.S. at 382; Watson, 170 N.H. at 727; see also Lynch, 169 N.H. at 697-98 (ruling that defendant's statement, "I guess the only thing I can do is probably stop talking and get a lawyer," was not an unambiguous invocation of the right to silence or counsel because statement was equivocal and defendant did not stop talking after making the statement (quotation omitted)); State v. Jeleniewski, 147 N.H. 462, 465-67 (2002) (ruling that, under the State and Federal Constitutions, defendant did not invoke the right to remain silent under Miranda when officer twice asked defendant if he had anything more to say, and defendant responded "[n]o, sir," but then answered additional questions). In fact, had the defendant wished to stop speaking with the officer, he could have simply hung up the phone, as he later did — thereby demonstrating that when the defendant "wanted to end the interview, he knew how to do it unambiguously." United States v. Sherrod, 445 F.3d 980, 982 (7th Cir. 2006) (ruling that defendant's initial statement that he was "not going to talk about nothin'" was not an invocation of the right to silence under Miranda, when defendant invoked his right to counsel by asking for an attorney approximately ten minutes later).

Nor is the defendant's statement sufficiently clear to be an unambiguous invocation of the right to remain silent. See Dillon, 2015 WL 13745783, at *3-

4, 13 (finding that defendant did not "unequivocally invoke" the right to remain silent under <u>Miranda</u>, when defendant twice responded "no comment" to officer's questions during custodial interrogation); <u>State v. Marden</u>, 673 A.2d 1304, 1309-10 (Me. 1996) (finding that defendant's post-<u>Miranda</u> "no comment" responses were not unambiguous invocations of the right to remain silent when defendant did not state that he wished for interrogation to end); <u>Henderson v. Singletary</u>, 968 F.2d 1070, 1072-73 (11th Cir. 1992) (describing defendant's post-<u>Miranda</u> "no comment" response as "equivocal"). Given the ambiguous nature of the defendant's statement, that the defendant continued speaking with the officer, and because we are left to speculate as to the defendant's reasons for saying "no comment," we conclude that the defendant's "no comment" statement was not, in fact, an invocation of the Fifth Amendment privilege against compelled self-incrimination.

We now turn to the second issue raised by the defendant in his appeal. The defendant argues that the trial court "may have erred" by not disclosing certain confidential records that it reviewed <u>in camera</u> prior to trial, and requests that we conduct an <u>in camera</u> review of those records to determine whether the trial court sustainably exercised its discretion by withholding them. See <u>State v. Aldrich</u>, 169 N.H. 345, 354 (2016). In <u>State v. Girard</u>, 173 N.H. ___, ___ (decided October 16, 2020) (slip op. at 6-10), we recently clarified the standard that a trial court must apply when determining whether confidential records must be disclosed to a defendant. Because the trial court did not have the benefit of <u>Girard</u> when it conducted its <u>in camera</u> review and withheld certain confidential records, we remand to the trial court for the limited purpose of reviewing confidential records in accordance with the standard set forth in <u>Girard</u>.

On or before February 11, 2021, the trial court shall review the withheld confidential records, which are being transferred with this opinion, in accordance with the standard set forth in <u>Girard</u>, and shall report the results of its review to this court. If the trial court determines that it would have disclosed any of the records that it withheld had it applied the standard set forth in <u>Girard</u>, it shall order a new trial unless it determines that its failure to disclose such records was harmless beyond a reasonable doubt. See <u>id</u>. at ___ (slip op. at 9-10). If the trial court determines under <u>Girard</u> that it would have ordered the disclosure of any of the withheld records, but that its failure to disclose such records was harmless beyond a reasonable doubt, it shall identify in its report the records that it would have disclosed, but shall not disclose such records to the parties. Unless the trial court determines that the defendant is entitled to a new trial, the clerk of the Rockingham County Superior Court shall transfer the confidential records to this court after the trial court has completed its review of the records and has reported the results

of the review to this court.  All further processing of this appeal is stayed until the trial court completes its review in accordance with this opinion.

<u>Affirmed in part and remanded</u>.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.