HOWARD, Circuit Judge.
Following a jury trial in New Hampshire Superior Court, Scott Abram was convicted of twenty-one counts of aggravated felonious sexual assault against his two stepchildren, four counts of endangering the welfare of a child and one count of indecent exposure and lewdness.
After exhausting his direct appeals, Abram petitioned for a writ of habeas corpus in the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 2254. Abram argued that the state trial court violated his rights under the Sixth Amendment Confrontation Clause by prohibiting him from cross-examining his stepchildren regarding their accusations that he had also abused their younger siblings. The district court denied the petition. We affirm.
I.
When a federal court reviews a state court conviction on habeas review, “any state court factual findings are presumed to be correct.” Clements v. Clarke, 592 F.3d 45, 47 (1st Cir.2010). According *47 ly, we briefly sketch the relevant facts underlying Abram’s conviction and the accusations Abram sought to introduce at trial, drawing liberally from the district court’s decision in Abram v. Warden, No. 07-cv-272-JL, 2009 WL 1409483, 2009 U.S. Dist. LEXIS 43141 (D.N.H. May 20, 2009), which in turn draws from the New Hampshire Supreme Court’s decision in State v. Abram, 153 N.H. 619, 903 A.2d 1042 (2006).
In 1997, Abram married Evelyn Towne, who had three children: a daughter, A.A., and two sons, C.A. and K.A. Abram and Towne then had two children together, M.T. and J.T. On November 4, 2002, A.A. and C.A. told their mother that Abram had been sexually abusing them for a long time.[1] The children reported that Abram sexually assaulted them and forced them to engage in sexual conduct with each other. Both claimed that Abram had anally penetrated them, and they also accused him of anally penetrating their younger brothers, K.A. and M.T.[2] When questioned by investigators, however, the two younger brothers denied that the alleged abuse occurred.[3]
Prior to trial, the government filed a motion in limine to preclude the defendant from eliciting any testimony regarding the older siblings’ accusations that Abram abused K.A. and M.T. The state anticipated that Abram would raise these accusations — and K.A.’s and M.T.’s denials — on cross-examination in order to impeach A.A.’s and C.A.’s credibility. The government argued that the court should not permit any questioning about the accusations because Abram could not establish that the allegations were “demonstrably false.” It relied on State v. Gordon, 146 N.H. 258, 770 A.2d 702 (2001) and State v. White, 145 N.H. 544, 765 A.2d 156 (2000) for the proposition that under New Hampshire law, the defendant could “introduce a victim’s prior allegation of sexual assault for impeachment purposes by showing that such allegations were demonstrably false, which means clearly and convincingly untrue.” [4]
In his written objection to the state’s motion, Abram offered evidence that, he contended, proved the falsity of A.A. and C.A.’s allegations regarding their younger siblings. He emphasized that physical examinations of K.A. and M.T. in 2002 revealed no evidence of physical abuse, and that both K.A. and M.T. had repeatedly denied the sexual abuse in interviews with investigators. Abram also pointed out that A.A., in her 2002 statement to police, mentioned that she had observed Abram abusing M.T. “three years ago,” and yet, in *48 1999, she had denied ever seeing Abram abuse M.T.
The trial court found that Abram failed to prove that the accusations were demonstrably false and granted the state’s motion. The court noted that K.A.’s and M.T.’s physical examinations did not prove or disprove whether the abuse had occurred.[5] It also observed that although K.A. and M.T. initially denied the allegations of the assault, there was evidence that undermined the defendant’s claim that these allegations were false. The court cited medical records from 2002, in which the children’s mother reported that C.A., K.A. and M.T. frequently complained of anal pain. After K.A. and M.T. were removed from the family home in 2002, a family member discovered K.A. masturbating, and both boys told family members that Abram had shown them the activity. M.T. told police that Abram had frequently touched his “penis and bum.” The trial court further found that A.A.’s “minor temporal inconsistency” in reporting the time line of sexual abuse did not clearly indicate that the allegations were false, particularly given her young age at the time she was interviewed.
The jury convicted Abram, and the trial court sentenced him to a term of 50 to 100 years’ imprisonment.
On direct appeal, the New Hampshire Supreme Court considered and rejected Abram’s claim that the trial court’s exclusion of the allegations regarding K.A. and M.T. violated Abram’s Sixth Amendment right to confront the witnesses against him. The court acknowledged that under our holding in White v. Coplan, 399 F.3d 18 (1st Cir.2005), New Hampshire’s application of the “demonstrably false” standard could violate the Confrontation Clause in certain “extreme cases” when its application was “patently unreasonable.” Abram, 903 A.2d at 1053. Abram’s was not an extreme case meriting reversal under White, the state court held, because Abram could not present similarly compelling evidence that the allegations at issue were false. It also concluded that there was a particularly high likelihood in Abram’s case that the excluded evidence would result in a “trial within a trial,” because the allegations involved children who were not victims in the case. Id.[6]
Abram renewed his Sixth Amendment claim in his federal habeas corpus petition. The district court denied Abram’s petition on summary judgment, on the grounds that the New Hampshire Supreme Court’s decision was neither contrary to nor an unreasonable application of federal law under Supreme Court precedent, as interpreted by White. This appeal followed.
II.
We review de novo the district court’s denial of habeas relief. Clements, 592 F.3d at 51. The Anti-Terrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-132, 110 Stat. 1214, dictates our standard of review of the New Hampshire Supreme Court’s disposition of Abram’s direct appeal. Where, as here, the state court considered and *49 rejected the petitioner’s claim on the merits, we may grant habeas relief only if its adjudication:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). Abram’s claim invokes the first prong of this statute. He contends that he is entitled to habeas relief because his inability to cross-examine A.A. and C.A. about their allegations regarding K.A. and M.T. violated the Confrontation Clause. The state supreme court’s determination that it did not, he avers, constituted an unreasonable application of clearly established federal law.
(3) Under section 2254(d)(1), an unreasonable application of clearly established federal law occurs when the court either “identifies the correct governing legal rule from the Supreme Court’s cases but unreasonably applies it to the facts of the particular state prisoner’s case or unreasonably extends a legal principle from the Supreme Court’s precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.” John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009).
We begin with the question of what constitutes “clearly established” federal law on the issue presented. “The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in
a criminal prosecution ‘to be confronted with the witnesses against him.’” Delaware v. Van Arsdall, 475 U.S. 673, 678,106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The Supreme Court has recognized the ability to cross-examine adverse witnesses as essential to that right. Id. at 678-79, 106 S.Ct. 1431. The right is not absolute, however. Trial courts may place reasonable limits on cross-examination “based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that is repetitive or only marginally relevant.” Id. at 679,106 S.Ct. 1431.
Abram relies primarily on our decision in White to argue that the exclusion of the allegations pertaining to K.A. and M.T. was an unreasonable application of clearly established federal law.[7] Although we agree that White articulates the relevant legal principles under which we evaluate Abram’s claim, we conclude that the state supreme court’s application of those principles was not unreasonable.
In White, the defendant was charged with assaulting the two young daughters of a friend while visiting their home. 399 F.3d at 20. The girls were the only witnesses who testified about the alleged assaults, and the government’s case hinged on their credibility. Id. at 20-21. At trial, White sought to cross-examine both girls about prior accusations of sexual assault that the girls had made against three other men. A jury had acquitted one of the men of the charges; no formal charges were brought against the second; and the police never identified the third. Id. White argued that the girls’ prior accusations were similar to their accusations against him, and that evidence demonstrating the falsi *50 ty of these prior accusations thus bore upon the girls’ credibility and showed prior sexual knowledge. Id. at 22.
The trial court prohibited all inquiry into the prior allegations, and the New Hampshire Supreme Court affirmed White’s conviction. Id. The state supreme court found that White had proven the falsity of the prior accusations to a “reasonable probability,” but concluded that New Hampshire law required that the defendant prove the prior accusations were “demonstrably false” for them to be admitted, which the court equated with clear and convincing evidence. Id. The district court denied White’s habeas petition.
On habeas review, we interpreted Supreme Court decisions to require “a balancing of interests depending on the circumstances of the case” in determining whether a defendant’s Sixth Amendment Confrontation Clause rights had been violated. These interests included the importance of the evidence to an effective defense, the scope of the ban involved, and the strength vel non of state interests weighing against admission of the evidence. Id. at 24. Applying this test, we determined that although New Hampshire’s “demonstrable falsity” standard was “generally defensible,” id., White represented an “extreme case” in which application of this standard violated the Confrontation Clause. The facts that made the case extreme, we observed, were (1) the state supreme court’s finding that the prior accusations were false to a reasonable probability; (2) the fact that the defendant had virtually no other way to defend himself; and (3) the similarity between the prior accusations and those made against White. Id. at 27.
We thus held in White that a defendant may have a Sixth Amendment right to cross-examine a witness regarding prior allegations of sexual assault on a lesser showing than “demonstrable falsity,” but only where multiple factors in combination weigh heavily in favor of allowing such questioning. It is significant that the accusations in White, while falling short of the New Hampshire standard, nonetheless were false to a high degree of likelihood, i.e., to a “reasonable probability.” Such prior accusations will only be relevant to the victim’s credibility if the jury concludes they are false. Given the potential harms from pursuing such an inquiry, including the emotional toll on the victim and confusion over what conduct is actually before the jury, it is appropriate to require the defendant to satisfy a high threshold regarding the likelihood of falsity. We nevertheless recognized in White that, in some circumstances, New Hampshire’s particularly demanding requirement may have to give way to a defendant’s Confrontation Clause rights.
None of the factors that prompted us to label White an “extreme case” is present here. First, unlike the defendant in White, Abram could not prove that the accusations concerning K.A. and M.T. were false to a “reasonable probability.” On careful review, the New Hampshire Supreme Court found the evidence of falsity to be inconclusive at best, Abram, 903 A.2d at 1053, and Abram has not challenged that finding under 28 U.S.C. § 2254(d)(2).[8]
*51 Second, the exclusion of the evidence in this case did not deprive Abram of a defense as it did White. Abram sought to introduce the allegations in part to argue that the children were so desperate to escape his discipline that they sought to “scorch the earth” with incendiary allegations. Even without this testimony, however, he was able to introduce other evidence supporting his theory as to why the children had “invented” their allegations of abuse against him.
Third, whereas in White the prior allegations involved the same victims as those in the defendant’s case, in Abram’s case, the excluded evidence involved different victims who were not otherwise part of Abram’s trial. The New Hampshire Supreme Court concluded that allowing Abram to raise the excluded evidence would be more likely to “produce confusion of the issues, likely resulting in a ‘trial within a trial,’ and potentially causing substantial delay.” Abram, 903 A.2d at 1053-54. We think this conclusion was reasonable.
Abram acknowledges these distinctions but nevertheless contends that the state court misapplied White’s three-factor balancing test. He argues that the importance of the testimony to the defense and the scope of the prohibition outweighed the strength of the state interests against admission. The testimony was particularly important to the defense, he claims, because the prosecutor’s case hinged almost entirely on the credibility of A.A. and C.A. And he argues that the scope of the ban was absolute, in that the defense was not allowed to ask any questions about the allegations pertaining to K.A. and M.T.
Although the New Hampshire Supreme Court did not explicitly apply this balancing test to the facts in Abram’s case, we may consider Abram’s argument on habeas review in determining whether the state court has “unreasonably refuse[d] to extend a legal principle to a new context where it should apply.” Fratta v. Quarterman, 536 F.3d 485, 505 (5th Cir.2008); see also Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir.2001) (observing that while the reasoning used by the state court is “pertinent,” “[t]he ultimate question on habeas ... is not how well reasoned the state court decision is, but whether the outcome is reasonable”).
That said, under AEDPA, we may only consider whether, in applying these factors, the state court’s determination — that Abram’s Confrontation Clause rights were not violated — was unreasonable. We may not consider whether we would have reached the same conclusion. Where, as here, the federal law in question sets forth general principles, state courts have considerable flexibility to exercise their judgment in reaching outcomes. See Yarborough v. Alvarado, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)(“The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.”).
With this in mind, we do not conclude that the state supreme court’s conclusion was unreasonable. A.A. and C.A.’s allegations regarding the abuse of their younger siblings would have only undermined their credibility if those allegations were indeed false. See White, 399 F.3d at 24 (“Many jurors would regard a set of similar past charges ... if shoum to be false, as very potent proof in [the Petitioner’s] favor.”)(emphasis added); Quinn v. Haynes, 234 F.3d 837, 846 (4th Cir.2000) (“A true allegation of another sexual assault is completely irrelevant to credibility----”). As we observed above, the state supreme court found that the evidence neither proved nor disproved the falsity of the accusations regarding K.A. and M.T. Given that finding, the state court did not *52 unreasonably apply federal law by excluding this evidence. We note that other circuits have failed to find Sixth Amendment violations on similar facts. See Cookson v. Schwartz, 556 F.3d 647, 654 (7th Cir.2009) (rejecting habeas claim and distinguishing White, where the petitioner could not establish that the excluded sexual assault allegation was false to a “reasonable probability”); Quinn, 234 F.3d at 847, 851 (rejecting habeas claim where the denials of the alleged perpetrators constituted the only evidence that the prior allegations were false); Boggs v. Collins, 226 F.3d 728, 735 (6th Cir.2000) (rejecting habeas claim where the state trial court had found that the victim had never made the alleged prior accusations).[9]
It would also have been reasonable for the state court to find that the scope of the exclusion was not absolute, in that Abram was not prevented from pursuing his theory of the children’s motive to fabricate. We so conclude based on our reading of Van Arsdall, the Supreme Court case from which White draws this factor of its three-part test, and the case on which Abram relies in asserting that the ban in his case was absolute.
In Van Arsdall, the defendant claimed that the state trial court had violated the Confrontation Clause by not allowing him to cross-examine a government witness in his murder trial about the undisputed fact that the witness had agreed to speak with the government about the murder in exchange for the dismissal of a drunk-driving charge against him. 475 U.S. at 676, 106 S.Ct. 1431. After acknowledging that trial courts generally “retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination,” the Supreme Court held that the trial court’s exclusion of this evidence constituted a constitutional violation because “the trial court prohibited all inquiry into the possibility that [the government witness] would be biased....” Id. at 679,106 S.Ct. 1431.
It was reasonable for the New Hampshire Supreme Court to conclude that the Supreme Court’s concern in Van Arsdall was that the defendant, if not permitted to cross-examine the witness about his agreement with the government, would be completely unable to explore the question of bias. Here, on the contrary, Abram retained the ability to cross-examine the witnesses about their possible incentives to fabricate the accusations of abuse. ■ As the Supreme Court has often repeated, “the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.” See, e.g., Delaware v. Fensterer, 474 U.S. 15, 20,106 *53 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam).
Finally, Abram argues that White left open the possibility that courts might find other cases “extreme” such that application of New Hampshire’s “demonstrably false” standard would be patently unreasonable, even if the facts were distinguishable from those of White itself. He urges us to find that the application of the “demonstrably false” standard would be unreasonable here, both because the prior accusations in question were unusual — in that they involved the defendant’s alleged abuse of other children, rather than the child victims’ allegations against other potential defendants — and because both the lack of physical evidence of the abuse and K.A. and M.T.’s denials suggested the falsity of the claims.
In contending that his case is “extreme,” however, Abram ignores the important ways in which, as we have explained, this case differs from White. The mere possibility of falsity that he raises is significantly different from the finding in White of a “reasonable probability” that the earlier allegations were false. Unlike White, Abram was not entirely deprived of his opportunity to defend. Moreover, the state court in this case supportably saw an added risk of jury confusion where the excluded evidence concerned different victims. In sum, the circumstances here, taken together, fall short of establishing an “extreme” case meriting the grant of a writ of habeas corpus.
Having considered all of Abram’s arguments, we conclude that the state supreme court’s decision was not an unreasonable application of clearly established federal law.
III.
For the reasons set forth above, we affirm the judgment of the district court.

. A.A. and C.A. made similar allegations in 1999. After the children had given formal statements describing the abuse, however, their mother called the police to say that the children had recanted.

. The assaults and abuse are described in greater detail in Abram, 903 A.2d at 1044.

. M.T. told investigators that he had been touched on his penis and buttocks once, and that he had seen his father masturbate on multiple occasions. Neither boy indicated that he had been anally penetrated, however.

. The New Hampshire Supreme Court later revisited this standard in State v. Miller, 155 N.H. 246, 921 A.2d 942 (2007). Miller overruled Gordon to the extent that Gordon construed White "to require a defendant to demonstrate clearly and convincingly that the prior allegations were false before being permitted to cross-examine the victim about them under [New Hampshire Rule of Evidence] 608(b).” Id. at 947. The court concluded that state trial courts have wide discretion to allow or prohibit the cross-examination of a sexual assault victim concerning a prior allegedly false allegation of sexual abuse. Id. The "demonstrably false” standard merely states when courts are constitutionally required to allow such questioning.” Id.

. Both exams were normal, but the doctor who examined both K.A. and M.T. stated in her November 13, 2002 report that the fact that the exams were within normal limits “is to be expected given the type of abuse reported.” The normal exams, she added, "neither prov[ed] nor negat[ed] sexual abuse.”

. The New Hampshire Supreme Court reversed Abram’s convictions on nine of the twenty-one counts of felonious sexual assault, holding that the trial court had improperly joined the charges against Abram in one proceeding. Abram, 903 A.2d at 1051. The trial court subsequently resentenced Abram to thirty to sixty years’ imprisonment.

. Although section 2254(d) refers specifically to federal law “as determined by the Supreme Court,” we may also consider lower federal court decisions, which may state the clearly established federal law or assist in determining how a general standard applies to a particular set of facts. Evans v. Thompson, 518 F.3d 1, 10 (1st Cir.2008).

. Even if Abram had raised this claim, to the extent that he challenged a factual finding he would have faced a heavy burden to show that the state court’s determination was unreasonable. Under AEDPA, the federal habeas court must presume that the state court’s factual findings were correct unless applicants rebut the presumption with "clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

. In so holding, Boggs and Quinn each determined that the prior accusations constituted "general credibility” evidence rather than evidence suggesting the alleged victim's bias or a motive to lie, see Boggs, 226 F.3d at 739-740; Quinn, 234 F.3d at 845, and relied on Supreme Court language suggesting that "general credibility” evidence may be afforded less protection under the Confrontation Clause than evidence pointing to a specific bias or motive to lie on the part of the victim. See Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); id. at 321, 94 S.Ct. 1105 (Stewart, J., concurring).
Abram appears to imply that because he sought to introduce the excluded evidence to further support his theory of the children's bias, as well as to directly attack their credibility, the allegations are entitled to automatic and unconditional constitutional protection, regardless of the allegations’ veracity. We do not read the Confrontation Clause case law to require this. Unlike this case, Davis and its progeny all involved "impeachment based upon credibility-impugning facts that were not in dispute.” Quinn, 234 F.3d at 846.