NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2014-0774

THE STATE OF NEW HAMPSHIRE

v.

DAVID ALDRICH

Argued: May 11, 2016
Opinion Issued: August 30, 2016

Joseph A. Foster, attorney general (Sean P. Gill, attorney, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, David Aldrich, appeals his conviction, following a jury trial in Superior Court (MacLeod, J.), on two counts of aggravated felonious sexual assault. See RSA 632-A:2, I(j) (2007). The defendant challenges the trial court's ruling preventing him from cross-examining the victim about three of four allegedly false allegations of sexual assault that she had made against other men. He also challenges the court's failure to disclose material following an in camera review. We affirm.

The record supports the following facts. The defendant was charged with nine counts of aggravated felonious sexual assault and three counts of incest,

based upon events occurring between 1995 and 2002. The three counts of incest and seven of the nine counts of aggravated felonious sexual assault were dismissed. The remaining two counts of aggravated felonious sexual assault concerned alleged conduct from July 1998 to July 1999 and July 2000 to May 2001, when the victim was older than thirteen but younger than sixteen.

The defendant filed a motion in limine requesting, among other things, permission to cross-examine the victim about prior allegedly false allegations of sexual assault. At a pretrial motions hearing, the defendant proffered that, in several interviews with police, the victim made allegations of sexual assault or other misconduct against A.A., V.A., G.B., and M.G. According to the defendant, "[e]ach man has denied these false allegations," and, "at least one witness, [E.W.], contradicts [the victim's] allegations of sexual assault by [G.B.]." The defendant argued that New Hampshire Rule of Evidence 608(b) and his state and federal constitutional rights to confrontation entitled him to this cross-examination. See U.S. CONST. amends. VI, XIV; N.H. CONST. pt. I, art. 15.

The State argued that "the probative value of these 'false accusations' is outweighed by the danger of misleading the jury or in the alternative, confusion of the issues," and that "the defendant has failed to demonstrate that the prior allegations were indeed false." The State explained that the victim never recanted the allegations and there was no evidence before the court showing that the allegations were false.

The trial court granted the defendant's motion in part and denied it in part. The court allowed the defendant to cross-examine the victim about her allegations against A.A., stating that "such cross-examination is sufficiently probative given the unique facts of this case and not outweighed by substantial prejudice," and that "[t]his is particularly so given the undisputed fact that the [victim] falsely testified in a prior case regarding [A.A.]." However, the court denied the defendant's request to cross-examine the victim about her allegations against V.A., G.B., and M.G., ruling that "[t]he factors set forth in [State v. Miller, 155 N.H. 246 (2007)] weigh against permitting such cross-examination."

On appeal, the defendant argues that the court misapplied New Hampshire Rules of Evidence 608(b) and 403 and violated his state and federal constitutional rights to confrontation. See U.S. CONST. amends. VI, XIV; N.H. CONST. pt. I, art. 15.

We first hold that the trial court correctly applied the evidentiary rules. A trial court has broad discretion to determine the scope of cross-examination or the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion. State v. Kornbrekke, 156 N.H. 821, 823-24 (2008). To prevail under this standard, the defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. Id. at 824.

New Hampshire Rule of Evidence 608(b) provides, in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule § 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

Under this rule, we consider whether the trial court accurately gauged the probative value of the defendant's proposed line of cross-examination. See Kornbrekke, 156 N.H. at 824. To do so, we use a nine-factor test:

> (1) whether the testimony of the witness is crucial or unimportant; (2) the extent to which the evidence is probative of truthfulness or untruthfulness; (3) the extent to which the evidence is also probative of other relevant matters; (4) the extent to which the act of untruthfulness is connected to the case; (5) the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony; (6) the nearness or remoteness in time of the specific instances to trial; (7) the likelihood that the alleged specific-instances conduct in fact occurred; (8) the extent to which specific-instances evidence is cumulative or unnecessary in light of other evidence already received on credibility; and (9) whether specific-instances evidence is needed to rebut other evidence concerning credibility.

Miller, 155 N.H. at 252-53 (quotations and ellipses omitted). Of the nine factors, the seventh is particularly "critical . . . to the probative value analysis in this case." Kornbrekke, 156 N.H. at 826. If a prior allegation were not in fact false, then cross-examination about it would not be "probative of the [victim's] character for truthfulness or untruthfulness." Id. Thus, the trial court must assess the evidence of the accusation's falsity when deciding whether to permit the defendant to ask the victim about it. See id. at 824, 826.

Although Rule 608(b) permits a cross-examiner to inquire into conduct that is probative of the witness's character for truthfulness or untruthfulness, the examiner must generally "take the answer as the witness gives it." Miller, 155 N.H. at 249. Rule 608(b) prohibits the examiner from introducing "extrinsic evidence, such as calling other witnesses, to rebut the witness's statements." State v. Hopkins, 136 N.H. 272, 276 (1992). Separate constitutional concerns, however, may overcome this prohibition. See Kornbrekke, 156 N.H. at 824.

We have observed that, "[w]hether the trial court erred in denying cross-examination and whether it erred in excluding extrinsic evidence are distinct inquiries," and that "[b]oth are separate and distinct from the question whether the defendant's constitutional rights to confrontation mandated such cross-examination." Id. Here, the defendant argues that the trial court erred in denying cross-examination and that his constitutional confrontation rights mandated such cross-examination; he does not assert that the court erred by excluding extrinsic evidence.

The trial court determined that the Miller factors "weigh against permitting . . . cross-examination" about the three prior accusations at issue. The defendant disagrees. According to him, he proffered sufficient evidence showing that the accusations were false — specifically, he asserted that the three men denied the accusations against them, and another person contradicted the accusation against G.B. However, these mere denials are of questionable probative value. Cf. State v. Anderson, 686 P.2d 193, 200 (Mont. 1984) (noting that an attorney's testimony about an accused person's denial would be inadmissible in part because "a mere denial does not establish falsity"). All except one of the denials were made by men who, because they had been accused, had an incentive to deny. See Richardson v. Com., 590 S.E.2d 618, 621 (Va. Ct. App. 2004) (agreeing with the reasoning of other courts that "mere denial testimony . . . is inherently self-serving and does not, by itself, establish falsity"). The contradictory testimony regarding the accusation against G.B. is also lacking in probative value: the State proffered evidence that the person who contradicted that accusation subsequently, in a conversation with her father, undermined her own credibility regarding the matter. Thus, we cannot say that the court, when assessing the evidence of the falsity of the accusations, should have given the denials and the contradiction greater weight.

The defendant also asserts that "the number of men [the victim] accused of sexual assault or misconduct constituted some evidence that the accusations were false." The defendant cites three cases to support this assertion: People v. Mardlin, 790 N.W.2d 607 (Mich. 2010); United States v. Woods, 484 F.2d 127 (4th Cir. 1973); and Mintz v. Premier Cab Ass'n, 127 F.2d 744 (D.C. Cir. 1942).

In Mardlin and Woods — both criminal cases — it was held that evidence of the defendants' other alleged bad acts was admissible to show that the acts for which they had been charged were not accidental. In Mardlin, an arson case, the prosecution introduced evidence showing "that [the] defendant had been associated with four previous home or vehicle fires — each of which," like the home fire underlying his arson charge, "also involved insurance claims and arguably benefited [the] defendant in some way." Mardlin, 790 N.W.2d at 610. Woods concerned the first-degree murder, presumably by smothering, of the defendant's "eight-month-old pre-adoptive foster son." Woods, 484 F.2d at 128. At trial, the government was permitted to show that the defendant

4

previously "had custody of, or access to, nine [other] children who suffered a minimum of twenty episodes of" respiratory distress. Id. at 130.

In Mintz, a civil negligence case, the defendant was allowed to cross-examine the plaintiff about two other negligence claims, one arising from a "similar accident" that occurred "about two years before" and another in which the plaintiff "had fallen in a beauty parlor." Mintz, 127 F.2d at 744. In rejecting the plaintiff's argument on appeal that this evidence was inadmissible, the court reasoned that "[f]ortuitous events of a given sort are less likely to happen repeatedly than once." Id. According to the court, "[i]t was for the jury to decide from all the evidence . . . whether [the plaintiff] was merely unlucky or was 'claim-minded.'" Id. at 745.

The defendant argues:

Just as it would be unusual — but not impossible — for an individual to suffer three injuries caused by the negligence of others, to have seven children pass away due to naturally-caused respiratory distress, or to have five properties succumb to accidental fire, it would also be unusual — but not impossible — for an individual to be subjected to sexual assault or misconduct at the hands of five men, all while a child or young adult.

We disagree with the defendant's comparison. The evidentiary principle relied upon in Mardlin, Woods, and Mintz is known as the "doctrine of chances." Imwinkelried, An Evidentiary Paradox: Defending the Character Evidence Prohibition by Upholding A Non-Character Theory of Logical Relevance, the Doctrine of Chances, 40 U. Rich. L. Rev. 419, 437 (2006). Under this doctrine, "the proponent offers the evidence to establish the objective improbability of so many accidents befalling [a party] or the [party] becoming innocently enmeshed in suspicious circumstances so frequently." Id.

This doctrine is inapplicable to the evidentiary issue in this case. Here, the defendant asserts that the multiple accusations are "some evidence" that one or more of the underlying sexual assaults did not, in fact, occur. See N.H. R. Ev. 608(b). As applied in Mardlin, Woods, and Mintz, however, the doctrine presupposes that the prior instances occurred, and the proponents of the evidence sought to rebut the contention that the conduct at issue was accidental. Because the defendant is not offering the victim's multiple accusations to rebut an assertion that the conduct with which the defendant was charged was accidental, those cases are inapposite.

Moreover, the defendant's argument rests upon the premise that it is unlikely for someone to be a victim of repeated acts of sexual assault by multiple perpetrators. However, there is no support for this premise in the record. Indeed, the State cites literature suggesting that the opposite is true —

that it is, in fact, common for child victims of sexual assault to be revictimized. See Kellogg & Hoffman, Child Sexual Revictimization by Multiple Perpetrators, 21 Child Abuse & Neglect 953 (1997).

Because the defendant did not proffer sufficient evidence of the falsity of the accusations, his proposed cross-examination about them is not probative of the victim's character for untruthfulness. See N.H. R. Ev. 608(b); Kornbrekke, 156 N.H. at 826. Thus, the trial court did not unsustainably exercise its discretion under Rule 608(b) when it prevented the defendant from cross-examining the victim about the accusations. Moreover, having determined that cross-examination about the accusations lacks probative value, its potential to cause prejudice is no longer relevant to our analysis, see Kornbrekke, 156 N.H. at 826, and, therefore, we need not address the defendant's arguments about the court's application of Rule 403.

We now turn to the defendant's argument that "[p]recluding the proposed cross-examination violated [his] confrontation rights under Part I, Article 15 of the New Hampshire Constitution and the Sixth and Fourteenth Amendments to the United States Constitution." We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 15 of the New Hampshire State Constitution provides, in pertinent part: "Every subject shall have a right to produce all proofs that may be favorable to himself; to meet the witnesses against him face to face, and to be fully heard in his defense, by himself, and counsel." N.H. CONST. pt. I, art. 15. We have held that incident to this right is the opportunity to impeach a witness's credibility through cross-examination. Miller, 155 N.H. at 253. Although a trial court has broad discretion to fix the limits of cross-examination, it may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry. Id. Once a defendant has been permitted a threshold level of inquiry, however, the constitutional standard is satisfied, and the trial court's limiting of cross-examination is measured against an unsustainable exercise of discretion standard. Id. at 253-54. Thus, when the record shows that a threshold level of inquiry was allowed, we will uphold the trial court's decision limiting the scope of further cross-examination unless the defendant demonstrates that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. at 254.

Here, the court allowed the defendant to attack the victim's credibility in several respects. At trial, he cross-examined her about having previously lied in court in a different case, about lying that she was a virgin until she turned eighteen, and about allegedly lying that she had been pregnant. He also established inconsistencies in the victim's statements to police, teachers, a guidance counselor, and New Hampshire and Vermont social workers. Additionally, the court allowed the defendant to ask the victim about her

6

allegedly false accusation against A.A. Thus, the court did not prevent the defendant from inquiring into the victim's character for truthfulness or untruthfulness.

Moreover, the State Constitution does not require the trial court to permit cross-examination about prior allegations unless the defendant shows that such allegations were demonstrably false, which we have held to mean clearly and convincingly false. See State v. Abram, 153 N.H. 619, 631 (2006). Here, the defendant's evidence showing the falsity of the accusations was that the accused men allegedly denied them, another person contradicted the accusation against G.B., and the accusations were numerous. We conclude that this evidence of falsity, like that in State v. Abram, is "inconclusive at best," not clear and convincing. Abram v. Gerry, 672 F.3d 45, 50 (1st Cir. 2012); see Abram, 153 N.H. at 632 (noting the trial court's reasons for finding insufficient the defendant's evidence of the falsity of prior accusations). We therefore discern no violation of our State Constitution.

Next, we address the defendant's argument that the trial court violated the Federal Confrontation Clause. See U.S. CONST. amends. VI, XIV. "The Supreme Court has declared cross-examination an essential constitutional right for a fair trial, subject to reasonable limits reflecting concerns such as prejudice, confusion or delay incident to marginally relevant evidence." White v. Coplan, 399 F.3d 18, 24 (1st Cir. 2005) (quotations omitted). "In a criminal case, restrictions on the defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve." Id. (quotations omitted). "Factors that the Supreme Court has deemed relevant are the importance of the evidence to an effective defense, the scope of the ban involved, and the strength vel non of state interests weighing against admission of the evidence." Id. (citations omitted).

Concerning the first factor, we recognize the importance of the evidence that the defendant sought to elicit. If at trial the defendant could have shown, on cross-examination, that the victim had previously lied about being sexually assaulted, that evidence could have "suggest[ed] a pattern," which in turn could have "suggest[ed] an underlying motive" of the victim to lie about the defendant's conduct in this case. Id. Here, however, the defendant proffered only inconclusive evidence of the falsity of the other three prior accusations. It is therefore highly unlikely that, at trial, the defendant could have established through cross-examination that the victim lied in making the subject accusations. Thus, under the first factor, the proposed cross-examination was not as important to the defendant's case as it may have been had his evidence of the accusations' falsity been more compelling.

The other factors do not weigh in the defendant's favor. Concerning the second, the trial court's "ban" on cross-examination was not absolute: the

7

defendant was permitted to ask the victim about her prior accusation against A.A. Id. Concerning the third, the Supreme Court has recognized the importance of the reasons that the trial court gave to support its ruling — namely, preventing harassment of the victim, prejudice, and confusion of the issues. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Balancing the factors, we conclude that, contrary to the defendant's contention, the court's ruling was not arbitrary or disproportionate to the interests that the court cited. See Coplan, 399 F.3d at 24.

Additionally, to the extent that the defendant argues that this is an "extreme case" in which application of New Hampshire's "demonstrably false" standard violates the Federal Confrontation Clause, we disagree. See Abram, 672 F.3d at 50; Coplan, 399 F.3d at 27. In Coplan, the First Circuit described an "extreme case" as one in which (1) the prior accusations were found to be false to a reasonable probability, (2) the defendant had virtually no other way to defend himself, and (3) the prior accusations were similar to the present ones. Coplan, 399 F.3d at 27; see Abram, 672 F.3d at 50. Here, there was no finding that the accusations were false "to a reasonable probability." Abram, 672 F.3d at 50 (quotation omitted). Thus, we conclude that this is not the "extreme case" that the courts in Coplan and Abram contemplated. See id.; Coplan, 399 F.3d at 27. We therefore hold that the trial court's decision to limit cross-examination in this case did not violate the Federal Confrontation Clause.

Prior to trial, the court conducted an in camera review of confidential material relating to the victim, including New Hampshire Division for Children, Youth and Families records, psychiatric and psychological evaluations, and medical records. The court then ordered the disclosure of portions of the records in accordance with State v. Gagne, 136 N.H. 101 (1992). See Gagne, 136 N.H. at 104-06 (setting forth the standard to determine when a criminal defendant is entitled to privileged material to aid his defense). The defendant now argues that, "[b]y failing to order the disclosure of additional material, the court may have erred." He requests that we conduct an in camera review of the confidential material withheld by the trial court.

We review a trial court's decision on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard. State v. Guay, 162 N.H. 375, 385 (2011). Based upon our review of the records, we are satisfied that the portions withheld contain no information that would have been of assistance to the defense. See State v. Alwardt, 164 N.H. 52, 58 (2012); Guay, 162 N.H. at 385. Thus, the trial court sustainably exercised its discretion in declining to disclose additional records.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

8