**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0439, <u>State of New Hampshire v. Cesar Abreu</u>, the court on November 15, 2018, issued the following order:**

The defendant, Cesar Abreu, appeals his convictions for resisting arrest and being a felon in possession of a deadly weapon. <u>See</u> RSA 642:2 (2016); RSA 159:3, I (2016). He argues that the State failed to present sufficient evidence to support the convictions and that the Superior Court (<u>Brown</u>, J.) erred in allowing an arresting officer to testify about his interpretation of a statement made by the defendant. We affirm.

The following evidence was presented to the jury. During the overnight hours of December 17, 2016, Manchester police officers responded to a Manchester apartment complex. The first responding officers met the resident of one of the apartments in the office of the complex. The resident provided Officer O'Meara with a key to her apartment. O'Meara went to the apartment where he was met by another Manchester police officer. When O'Meara knocked at the door, the defendant responded. O'Meara advised him that he was no longer welcome at the apartment and that they were there to remove him. After the defendant swore and closed the door, O'Meara used the key to gain access. When he entered the apartment, he saw the defendant sitting on a couch. A black handgun was next to him on the couch, at arm's length from him. When O'Meara told the defendant not to move, the defendant began to move toward the gun. O'Meara pulled the defendant off the couch to the floor. The defendant was angry, telling the police to leave the apartment. When he said that he was going to be sick, the officers brought him to the bathroom. He did not get sick. As the officers were returning him to the living area, the defendant became belligerent and told O'Meara that he wasn't afraid of him. He walked toward O'Meara "in an aggressive manner" and, after another struggle, he was eventually handcuffed. Following a jury trial, he was convicted of resisting arrest and of being a felon in possession of a deadly weapon. This appeal followed.

The defendant first argues that the State presented insufficient evidence to prove the felon in possession charge. <u>See</u> RSA 159:3, I. To convict the defendant of this offense, the State was required to prove beyond a reasonable doubt that the defendant had been convicted of a statutorily-defined felony and that he was in possession of the gun. <u>See id</u>. The defendant argues that the State failed to prove that he was in constructive possession of the gun. <u>See</u>

State v. Francis, 167 N.H. 598, 604-05 (2015) (setting forth several factors relevant to determination of constructive possession).

A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. State v. Ruiz, 170 N.H. 553, 564-65 (2018). To prevail, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. Id. at 565.

The evidence presented at trial included testimony about the defendant's position on the couch, his proximity to the gun, and his actions after he was directed not to move. Accordingly, it consisted of both direct and circumstantial evidence. Therefore, the defendant's sufficiency challenge must fail if the evidence is such that a rational trier of fact could find guilt beyond a reasonable doubt. See State v. Saunders, 164 N.H. 342, 351 (2012).

The trial court provided the following instruction on possession without objection:

> Possession. A person possesses an item when he has it in his physical custody or exercises dominion and control over it. Possession can be actual or constructive.
>
> Actual possession is where a person has direct physical control over the item.
>
> Constructive possession is the power to determine the use or disposition of the item.
>
> In either case the State must prove that:
>
> 1) The Defendant knew the location of the item;
>
> 2) That the defendant knew the nature of the item; and
>
> 3) The defendant had custody of the item in the sense that it was in a place where it was under his control.
>
> In a case of constructive possession, mere access to an item is insufficient as is mere presence in the location where the item is found. The Defendant must have the power to control the item. Constructive possession can be inferred from all the evidence presented, including any incriminating statements or any other circumstances linking the Defendant to the item. Further,

2

constructive possession of the item need not be exclusive. The item can be possessed jointly with another.

A person cannot be convicted of the crime of unlawful possession of a firearm when he happens to walk or be in an apartment or house where a weapon merely exists.

A defendant's control over a weapon is not based upon its location at any particular place; rather, it is based upon the defendant's ability to determine the use and disposition of the gun.

We have stated that a defendant's control over a weapon is based upon his ability to determine its use and disposition. State v. Haycock, 136 N.H. 361, 363 (1992). In determining whether the defendant had control, the question is whether he is the one who could determine who could use the particular weapon. State v. Hammell, 147 N.H. 313, 319 (2001) (finding evidence that defendant "brandished" the weapon relevant to issue of control).

The evidence before the jury included the following facts: (1) when the officers entered the apartment, O'Meara observed the defendant sitting on a couch with a black handgun to his left; (2) the gun was an "arm's length" from him; (3) when O'Meara instructed him not to move, the defendant began to move toward the firearm; and (4) after securing the scene, O'Meara examined the gun and found that it was loaded and the safety was off. Having considered the evidence in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to conclude that the defendant had the ability to determine the use and disposition of the gun. Accordingly, we affirm the defendant's conviction for being a felon in possession. See, e.g., State v. Fox, 150 N.H. 623, 625 (2004) (generally person is in control of firearm if that person has the ability to determine who may have ultimate use of it).

The defendant also argues that the State failed to present sufficient evidence to prove that he resisted arrest. To convict the defendant of resisting arrest, the State was required to prove that he (1) knowingly or purposely (2) physically interfered with a person (3) recognized to be a law enforcement official (4) seeking to effect his arrest regardless of whether there was a legal basis for the arrest. See RSA 642:2. A conviction for resisting arrest must rest upon conduct that occurs while law enforcement is seeking to effect an arrest or detention. See State v. West, 167 N.H. 465, 472 (2015).

The defendant contends that no evidence was presented that the police announced their intention to arrest him and that, given their earlier announced purpose of removing him from the apartment, the State introduced insufficient evidence to prove that he understood that their later actions indicated that they intended to arrest him. Because persons rarely explain to others the inner workings of their minds or mental processes, one's culpable mental state is

3

usually proved by circumstantial evidence.  State v. Thomas, 168 N.H. 589, 603 (2016).  This is true in this case.  Accordingly, we review the evidence to determine whether it excludes all reasonable conclusions except guilt.  Ruiz, 170 N.H. at 568.  Under this standard, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation.  Id.

O'Meara testified that, when the two police officers arrived at the apartment, they both wore Manchester police uniforms.  O'Meara knocked at the door and "announced it was the Manchester Police Department."  When the defendant opened the door, O'Meara advised the defendant that they were there to remove him from the apartment.  The defendant swore and closed the door.  A struggle to remove him ensued and continued for some time.  At one point, four police officers were involved in the effort to handcuff the defendant.  O'Meara testified that the defendant "continued to fight and wouldn't allow us to easily put the handcuffs on him."

Viewing the evidence in the light most favorable to the State, we conclude that the actions of the police officers, including their attempt to handcuff the defendant, made clear to the defendant that they were attempting to effect his arrest.  Cf. State v. Lindsey, 158 N.H. 703, 706-08 (2009) (addressing conduct sufficient to sustain conviction for resisting arrest).  Accordingly the defendant has failed to meet his burden.  See, e.g., State v. Boutin, 168 N.H. 623, 627 (2016) (defendant bears burden of demonstrating that evidence was insufficient to prove guilt).

The defendant's final argument is that the trial court erred in overruling his objection and allowing O'Meara to testify about what he thought the defendant meant when he said that he wasn't afraid of O'Meara.  When asked, O'Meara responded: "To me it would mean that just someone is not willing to be cooperative with me and ready to be aggressive."  The defendant argues that he was prejudiced because this response "could have shaped the jury's impression of [the defendant]'s actions at the time that he allegedly resisted arrest" and that "it depicted [the defendant]'s character in a negative light, as the kind of aggressive person who might possess a gun in the circumstances prevailing in [the] apartment."

The trial court has broad discretion to determine the admissibility of evidence and we will affirm its ruling absent an unsustainable exercise of discretion.  State v. Aldrich, 169 N.H. 345, 348 (2016).  To prevail under this standard, the defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case.  Id.

The defendant presents two grounds to support his challenge to the propriety of this question.  First, he argues that, if the question asked O'Meara to speculate as to the defendant's thoughts, then it violated Rule 602.  N.H. R.

Ev. 602 (witness may testify to matter only if witness has personal knowledge of the matter). Second, he contends that, to the extent that the question sought to elicit "O'Meara's own thoughts upon hearing [the defendant]'s words," it was irrelevant.

We need not determine whether the trial court erred in admitting this testimony because we conclude that any error was harmless. The harmless-error doctrine recognizes that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence; it promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. State v. Bazinet, 170 N.H. 680, 686 (2018). To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict. Id. at 687. This standard applies to the erroneous admission of evidence. Id. An error may be harmless beyond a reasonable doubt if the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. Id. In making this determination, we consider the other evidence presented at trial as well as the character of the erroneously admitted evidence itself. Id.

O'Meara's very brief response to the challenged question addressed two concepts: the defendant's lack of cooperation and his potential aggression. This testimony was cumulative of the other evidence presented that addressed these same concepts. O'Meara had earlier testified that when the police officers arrived, he knocked on the door, and announced that they were from the Manchester Police Department. When the defendant answered the door and the officers told him that they were there to remove him from the apartment because "he was no longer welcome," the defendant swore at them and closed the door. After they entered the apartment with a key and told him not to move, the defendant moved toward the gun next to him. When the defendant left the bathroom, he approached O'Meara aggressively. The defendant continued to struggle as the police attempted to put handcuffs on him. Throughout his testimony, O'Meara described the defendant's continuing hostility and failure to cooperate as the police attempted to remove him from the apartment. Given the overwhelming nature of this evidence, we conclude that, even if the trial court erred in admitting the challenged testimony, any error was harmless with respect to the resisting arrest conviction.

We reach the same result with respect to the defendant's felon in possession conviction. We find unpersuasive the defendant's argument that this testimony prejudiced him because it depicted his "character in a negative light, as the kind of aggressive person who might possess a gun in the circumstances prevailing in [the] apartment." Given the overwhelming evidence

presented to the jury of the defendant's guilt, we conclude that O'Meara's very brief response did not affect the verdict.  <u>Id</u>.

<u>Affirmed</u>.

LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,**
**Clerk**
